Case Nos. 22-5884, 22-5912

# UNITED STATES COURT OF APPEALS
# FOR THE SIXTH CIRCUIT

CHELSEY NELSON PHOTOGRAPHY LLC, *et al.*,

*Plaintiffs-Appellees, Cross-Appellants*

v.

LOUISVILLE-JEFFERSON COUNTY,
KY METRO GOVERNMENT, *et al.*,

*Defendants-Appellants, Cross-Appellees*

———————————————

On Appeal from the United States District
Court for the Western District of Kentucky
Case No. 3:19-cv-00851

———————————————

## BRIEF OF THE STATES OF KENTUCKY, ALABAMA, ARKANSAS, GEORGIA, IDAHO, INDIANA, IOWA, KANSAS, LOUISIANA, MISSISSIPPI, MISSOURI, MONTANA, NEBRASKA, OHIO, OKLAHOMA, SOUTH CAROLINA, SOUTH DAKOTA, TENNESSEE, TEXAS, UTAH, AND WEST VIRGINIA AS AMICI CURIAE IN SUPPORT OF APPELLEES, CROSS-APPELLANTS

———————————————

| | |
|---|---|
| Daniel Cameron | Office of the Kentucky |
| *Attorney General* | Attorney General |
| Matthew F. Kuhn | 700 Capital Avenue, Suite 118 |
| *Solicitor General* | Frankfort, Kentucky 40601 |
| Daniel J. Grabowski | (502) 696-5300 |
| *Assistant Solicitor General* | Matt.Kuhn@ky.gov |

*Counsel for the Amici States*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES...........................................................................ii

INTERESTS OF AMICI CURIAE ...........................................................1

INTRODUCTION ..........................................................................................1

STATEMENT OF THE CASE .....................................................................4

ARGUMENT ....................................................................................................7

    I.    The public-accommodation law compels Nelson's speech. ........................8

    II.   The public-accommodation law applied to Nelson violates Kentucky's RFRA...................................................................................................21

CONCLUSION ...............................................................................................27

ADDITIONAL COUNSEL ..........................................................................29

CERTIFICATE OF COMPLIANCE ......................................................31

CERTIFICATE OF SERVICE ..................................................................32

# TABLE OF AUTHORITIES

## Cases

*303 Creative LLC v. Elenis*,
No. 21-476 (argued Dec. 5, 2022) ................................................8, 13, 15

*Barnes v. Glen Theatre, Inc.*,
501 U.S. 560 (1991) ..............................................................................14

*Boy Scouts of Am. v. Dale*,
530 U.S. 640 (2000) ........................................................ 9, 10, 11, 18

*Brush & Nib Studio, LC v. City of Phoenix*,
448 P.3d 890 (Ariz. 2019) ..................................................................27

*Buehrle v. City of Key West*,
813 F.3d 973 (11th Cir. 2015) ............................................................14

*Burwell v. Hobby Lobby Stores, Inc.*,
573 U.S. 682 (2014) ............................................................................24

*Chelsey Nelson Photo. LLC v. Louisville/Jefferson Cnty. Metro Gov't*,
479 F. Supp. 3d 543 (W.D. Ky. 2020) ............................................ 3, 14

*Doster v. Kendall*,
54 F.4th 398 (6th Cir. 2022) ..............................................................22

*Emp. Div. v. Smith*,
494 U.S. 872 (1990) ............................................................................21

*ETW Corp. v. Jireh Publ'g, Inc.*,
332 F.3d 915 (6th Cir. 2003) ........................................................ 13, 15

*Expressions Hair Design v. Schneiderman*,
581 U.S. 37 (2017).............................................................................13

*Fulton v. City of Philadelphia*,
141 S. Ct. 1868 (2021) .................................................................. 18, 19

*Gingerich v. Commonwealth*,
382 S.W.3d 835 (Ky. 2012)................................................................21

*Holt v. Hobbs*,
574 U.S. 352 (2015) ...................................................................... 23, 24

*Hurley v. Irish-Am. Gay, Lesbian & Bisexual Grp. of Bos.*,
515 U.S. 557 (1995) .................................................................................*passim*

*Janus v. Am. Fed'n of State, Cnty., & Mun. Emps., Council 31*,
138 S. Ct. 2448 (2018) ......................................................................8, 9

*Kaplan v. California*,
413 U.S. 115 (1973) .................................................................................13

*Lexington Fayette Cnty. Food & Beverage Ass'n v. Lexington-Fayette Urb. Cnty. Gov't*,
131 S.W.3d 745 (Ky. 2004)......................................................................2

*Maryville Baptist Church, Inc. v. Beshear*,
957 F.3d 610 (6th Cir. 2020) (per curiam) ...........................................22

*Masterpiece Cakeshop, Ltd. v. Colo. C.R. Comm'n*,
138 S. Ct. 1719 (2018) .................................................................... 16, 25

*Meriwether v. Hartop*,
992 F.3d 492 (6th Cir. 2021) ...................................................................19

*On Fire Christian Ctr., Inc. v. Fischer*,
453 F. Supp. 3d 901 (W.D. Ky. 2020) ...................................................22

*Ramirez v. Collier*,
142 S. Ct. 1264 (2022) .................................................................... 21, 22

*Riley v. Nat'l Fed'n of the Blind of N.C., Inc.*,
487 U.S. 781 (1988) .................................................................................15

*Rumsfeld v. F. for Academic and Institutional Rts., Inc.*,
547 U.S. 47 (2006)...................................................................................12

*Telescope Media Grp. v. Lucero*,
936 F.3d 740 (8th Cir. 2019) .......................................................... 19, 20

*W. Va. State Bd. of Educ. v. Barnette*,
319 U.S. 624 (1943) ...................................................................................4

## Statutes & Ordinances

Ky. Rev. Stat. § 344.130 ........................................................................20

Ky. Rev. Stat. § 344.230 ........................................................................24

Ky. Rev. Stat. § 446.350 .................................................................. 22, 24

Louisville Metro, Ky., Ord. § 92.04........................................................21

Louisville Metro, Ky., Ord. § 92.05............................................................5

Louisville Metro, Ky., Ord. § 92.08............................................................5

**Rules**

Fed. R. App. P. 29 ..........................................................................................1

**Other Authorities**

*The American President* (Columbia Pictures 1995) ......................................3

## INTERESTS OF AMICI CURIAE

This case asks whether a local government can force a photographer to provide her services for a same-sex wedding because she photographs other weddings. It pits Louisville's public-accommodation law against the Free Speech Clause and Kentucky's Religious Freedom Restoration Act—Louisville's attempt to prevent discrimination versus the photographer's rights. The Amici States have a profound interest in ensuring that the Court strikes the proper balance between those competing considerations. *See* Fed. R. App. P. 29(a)(2). And for Kentucky, that interest is personal. Chelsey Nelson, the photographer, is a Kentuckian; her business, Chelsey Nelson Photography LLC, is a Kentucky business. So Kentucky in particular has an overwhelming interest in protecting Nelson's rights and ensuring that Louisville's ordinance does not overstep.

## INTRODUCTION

When protecting individual rights and preventing unlawful discrimination clash, individuals may differ on which interest should win out. But courts may not. While "different people—operating in good faith—will surely assign different weights to the equality, dignity, and liberty interests this dilemma implicates," courts must follow the higher law. Op. & Order, R.130, PageID#5354. For

courts, there is no weight to assign. If the higher law applies, then the interest it supports wins.

Of course, compared to Louisville's public-accommodation law, both the Free Speech Clause and Kentucky's RFRA are higher law. "[F]ederal constitutional protections supersede local antidiscrimination laws, not vice versa." *Id.* at PageID#5371. Likewise, a state law trumps a contrary local ordinance. *See Lexington Fayette Cnty. Food & Beverage Ass'n v. Lexington-Fayette Urb. Cnty. Gov't*, 131 S.W.3d 745, 750 (Ky. 2004). That means if the Free Speech Clause applies, then Nelson's free-speech right takes precedence over Louisville's attempt to prevent discrimination. And if Kentucky's RFRA applies, then Nelson's religious-liberty right wins out.

Turns out, both apply. Forcing Nelson to create custom speech for a same-sex wedding when she objects to the message that speech conveys is compelled speech, which violates the Free Speech Clause. And forcing her to do the same in violation of her sincerely held religious beliefs without the City adequately showing why it cannot accommodate her violates Kentucky's RFRA. So Louisville's attempt to prevent discrimination here must yield to Nelson's rights. But that does not give her—or others—license to broadly discriminate. The applications here of the Free Speech Clause and Kentucky's RFRA are narrow.

All Louisville cannot do under the Free Speech Clause is compel Nelson to speak by creating custom photographs when her objection is based on the message such photographs convey. It can still prevent her from refusing to sell already-completed photographs or other goods to protected classes. And it can still prevent her from refusing to serve protected classes when her objection is status-based, rather than message-based. In other words, the compelled-speech analysis could very well look different under different facts. And the same is true for the inquiry under Kentucky's RFRA. Although Louisville has not met its burden under that law on these facts, that does not mean it could not do so in other cases.

In the end, although Louisville's interest in preventing discrimination must give way here, its ordinance retains its full force in most situations. All the City cannot do is directly force Nelson to speak in a way that sends a message with which she deeply disagrees. And that's a good thing. "America [is] wide enough both for you and 'a man whose words make your blood boil, who's standing center stage and advocating at the top of his lungs that which you would spend a lifetime opposing at the top of yours.'" *Chelsey Nelson Photo. LLC v. Louisville/Jefferson Cnty. Metro Gov't*, 479 F. Supp. 3d 543, 548 (W.D. Ky. 2020) (quoting *The American President* (Columbia Pictures 1995)). It will be a dark day indeed when a

government can "prescribe what shall be orthodox in politics, nationalism, religion, or other matters of opinion or force citizens to confess by word or act their faith therein." *W. Va. State Bd. of Educ. v. Barnette*, 319 U.S. 624, 642 (1943).

## STATEMENT OF THE CASE

Nelson is a photographer who operates a photography business. Decl., R.92-2, PageID#2837. Part of that entails her taking wedding photos. *Id.* at PageID#2849. In them, Nelson aims to celebrate the union of marriage. She views weddings as "significant and joyous events" because she believes that "marriage between a man and a woman is a gift from God that should be treasured and celebrated." *Id.* at PageID#2841. And for Nelson that is part of her Christian faith. Her faith shapes everything she does—including the messages she tries to convey by her wedding photography. *Id.* at PageID#2834, 2842. By her work, Nelson tries to "honor[] and glorif[y] God by promoting God's design for marriage." *Id.* at PageID#2842.

That means she cannot photograph a wedding that "celebrates or promotes ideas dishonorable to God or contrary to [her] religious beliefs." *Id.* at PageID#2872. For example, she cannot photograph a wedding that involves a same-sex, open, or polygamous marriage. *Id.* at PageID#2878. Likewise, Nelson

4

cannot photograph a wedding that condones racism, celebrates sacrilegious ideas, or negatively portrays marriage. *Id.* at PageID#2873–74.

The first item—same-sex weddings—is the source of conflict here. Although Nelson cannot photograph a same-sex wedding, because she views such photos as sending a message contrary to her deeply held religious beliefs, her objection is a very narrow one. *Id.* at PageID#2880. For example, she will take photos at the wedding of a man and a woman when hired by the "couple's gay or lesbian wedding planner, parents, or other family member." *Id.* at PageID#2881. And she will provide her "boutique-editing services" to "LGBT photographers" and "small businesses operated by LGBT persons." *Id.* In short, all Nelson cannot do is create custom photographs that celebrate a same-sex wedding.

But that's a problem under Louisville's public-accommodation ordinance. The law prohibits a place of public accommodation from denying the "full and equal enjoyment" of its goods or services based on a protected characteristic, including sexual orientation. Louisville Metro, Ky., Ord. § 92.05(A). And it includes enforcement mechanisms such as investigations, orders or injunctions compelling compliance, fines, and damages. *See id.* § 92.08(B)(6), (8).

Nelson and her business sued to block Louisville from enforcing the law against her—successfully so far. Below, she first obtained a preliminary injunction

and now a permanent one. Op. & Order, R.130, PageID#5396. In an exhaustive opinion, the district court held (among other things) that Nelson had standing, that the case was ripe, that the public-accommodation law compelled Nelson's speech and was content-based, and that Louisville violated Kentucky's RFRA.

On the compelled-speech holding, the court explained that Nelson's photography is "intended to and likely to in fact convey a message." *Id.* at PageID#5368. So it is protected speech. And it found that Louisville's public-accommodation law directly regulates that speech, not mere conduct or speech incidental to conduct. *Id.* at PageID#5370. That is because there is no conduct being regulated but for the speech. The "City cares about whether, not how, Nelson takes photographs—conduct that wouldn't be undertaken but for the photographer's expressive purpose and work product." *Id.* at 5369–70. So Louisville's public-accommodation law compels Nelson to speak. *Id.* at PageID#5371–72. And Louisville can only do that if it satisfies strict scrutiny, which the court found it fails. *Id.* at PageID#5379, 5382.

And on Kentucky's RFRA, the district court found that Nelson's "refusal to photograph same-sex weddings rests on a sincerely held religious belief," that the public-accommodation law imposed a substantial burden, and that the law again failed strict scrutiny. *Id.* at PageID#5392–93. It also rejected Louisville's

argument that Kentucky's RFRA does not allow for a pre-enforcement challenge. *Id.* at PageID#5394.

## ARGUMENT

The district court got it right. Applying the public-accommodation law to Nelson's custom wedding photographs results in compelled speech and violates Kentucky's RFRA. A government can but rarely compel speech. Public-accommodation laws cannot do so if they pose a direct burden on speech, unless they pass strict scrutiny. At the very least, a burden is direct when the good or service being regulated is itself speech—except in one situation. And that's when the speaker's objection is not based on the message of the speech.

Applying those principles here is straightforward. The good or service that Louisville seeks to regulate is Nelson's custom wedding photography. There is no other underlying good or service that her speech can be incidental to. And Nelson's photography is speech. So the public-accommodation law poses a direct burden on her speech unless her objection is not based on the message. But the unrebutted facts show that it is. That means the law must pass strict scrutiny. And it comes up short on both prongs in the speech context.

Likewise, under Kentucky's RFRA, Nelson had to show that her refusal to photograph same-sex weddings was motivated by a sincerely held religious belief

and that Louisville's law substantially burdens her right to act or not act in accordance with that belief. She has shown both. No one disputes the former. And the latter is clear: enforcing the public-accommodation law against Nelson would require her either to express a message contrary to her sincerely held religious beliefs or close up shop. And she faces fines and other penalties too. That means the burden flips to Louisville to meet strict scrutiny, which again it cannot do in this context.

## I.    The public-accommodation law compels Nelson's speech.

No doubt, whether the law compels Nelson's speech is in the shadow of *303 Creative LLC v. Elenis*, No. 21-476 (argued Dec. 5, 2022). But the good thing is little guidance is needed to resolve the issue. Indeed, as Justice Kavanaugh noted during oral argument, there is much agreement "on basic legal principles" between the parties in *303 Creative*. Oral Arg. Tr. at 43. Or according to Justice Gorsuch, "there's actually radical agreement" on how to "analyze the case legally." *Id.* at 139. And that is because the law is clear.

**1.** The First Amendment protects both the right to speak and the right not to. *Janus v. Am. Fed'n of State, Cnty., & Mun. Emps., Council 31*, 138 S. Ct. 2448, 2463 (2018). That means ordinarily a government cannot compel speech. It cannot force "individuals to mouth support for views they find objectionable." *Id.* In

8

most contexts, trying to do so is rightly "universally condemned." *Id.* And that includes in the public-accommodation context. *See Hurley v. Irish-Am. Gay, Lesbian & Bisexual Grp. of Bos.*, 515 U.S. 557, 572–73 (1995); *Boy Scouts of Am. v. Dale*, 530 U.S. 640, 659 (2000). When a public-accommodation law directly compels speech or imposes a direct burden on the speaker's message, then there is a free-speech problem. And the law must pass strict scrutiny.

There are two key cases showing that: *Hurley* and *Dale*. In *Hurley*, the Irish-American Gay, Lesbian and Bisexual Group of Boston argued that it had a right to march in a parade under the State's public-accommodation law. 515 U.S. at 561, 567. But the Supreme Court held that the parade's sponsors did not have to allow the group to march because doing so would change the parade's message that the sponsors sought to express. *Id.* at 573.

The Court determined that the parade was a form of protected expression. *Id.* at 570–71. And it explained that forcing the parade's sponsors to include the group would "alter the expressive content of their parade." *Id.* at 572–73. Even though application of a public-accommodation law usually would not violate free-speech protections, the law was "applied in a peculiar way." *Id.* at 572. It "had the effect of declaring the sponsors' speech itself to be the public accommodation." *Id.* at 573. In other words, the law was directly regulating the expressive conduct

of the parade. And critically, the parade sponsors were not excluding the group based on its members' protected status. They "disclaim[ed]" such an intent. *Id.* at 572. The sponsors simply did not want to allow the group to march because that would change the message they sought to convey. *Id.*

And the State offered no compelling reason to force them to do so. *Id.* at 578. Although the public-accommodation law on its face had the objective of ensuring equal access, that interest could not justify the compelled speech. The Court explained: "When the law is applied to expressive activity in the way it was done here, its apparent object is simply to require speakers to modify the content of their expression to whatever extent beneficiaries of the law choose to alter it with messages of their own." *Id.* at 578. That amounted not to preventing discrimination but to "promoting an approved message or discouraging a disfavored one." *Id.* at 579.

Similarly, in *Dale* the Court held that a public-accommodation law could not force the Boy Scouts to send a message by including James Dale as an adult Scout leader. 530 U.S. at 641, 644. Again, the Court determined that the law as applied was not regulating conduct but the expressive association of the Scouts directly—the message they sought to convey as an expressive association. *Id.* at 650. And it explained that forcing the Scouts to include Dale would change their

10

message and impose a significant burden on the Scouts' expressive-association rights. *Id.* at 654, 659.

The Court, however, was clear that an expressive association cannot "erect a shield against antidiscrimination laws simply by asserting that mere acceptance of a member from a particular group would impair its message." *Id.* at 653. The Scouts' expressive-association rights allowed them to exclude Dale not simply because he was gay—but because of how including him affected their desired message. *Id.* at 653. In other words, they prevailed in their case because their overriding reason was based on message not status. *Id.* And as in *Hurley*, there was no compelling reason to force the Scouts to speak a message in violation of their values. The Court explained that the "state interests embodied in New Jersey's public accommodations law do not justify such a severe intrusion on the Boy Scouts' rights to freedom of expressive association." *Id.* at 659.

All told, *Hurley* and *Dale* make clear that public-accommodation laws can almost never directly compel speech. To do so, such laws would have to pass strict scrutiny, which would require a different compelling state interest than preventing discrimination.

But the analysis is different when the speech compulsion is indirect. When the burden on the speaker's message is incidental to a regulation of conduct, then

a more lenient form of scrutiny applies. The key case for that is *Rumsfeld v. Forum for Academic and Institutional Rights, Inc.* (*FAIR*), 547 U.S. 47 (2006). There, the Court considered whether, as a condition of receiving federal funding, the government could force law schools to provide equal access to military recruiters as compared to other recruiters. *Id.* at 51. The law schools argued that doing so compelled them to speak a message with which they disagreed. *Id.* But the Court rejected that argument. It explained that the government's requiring equal access as a general matter "regulat[ed] conduct, not speech." *Id.* at 60. Requiring equal access chiefly affected what the law schools had to do, not what they had to say. *Id.*

To be sure, some of the activities that the law schools would have to undertake while providing access (sending emails and posting flyers) "clearly involve[d] speech." *Id.* But that speech was "plainly incidental to the [government's] regulation of conduct." *Id.* at 62. That conduct was allowing recruiters on campus, which—unlike the parade in *Hurley*—was "not inherently expressive." *Id.* at 64.

In short, the case law reveals two ends of the spectrum. On one end is direct compulsion of speech, like in *Hurley* and *Dale*. And on the other is indirect, like in *FAIR*. The main distinction is whether a law regulates some conduct separate from the speech: is the law's "effect on speech . . . only incidental to its

12

primary effect on conduct"? *Expressions Hair Design v. Schneiderman*, 581 U.S. 37, 47 (2017). If yes, then it is indirect. But if no, then it is generally direct.

**2.** So the questions, as in *303 Creative*, are straightforward. They are whether Nelson's wedding photography is speech, whether that speech is compelled, and whether the burden imposed by the compulsion is direct or indirect. And for the last issue, if there is no other good or service besides speech being regulated, then the question becomes whether the refusal to speak is primarily message- or status-based. So this case could all come down to if the refusal to speak is based on a who or a what. *See* Oral Arg. Tr. at 43, 88, *303 Creative*. And it does here. It's based on a what. But start at the beginning.

First, Nelson's photography is speech. That is hard to dispute. Both the Supreme Court and this Court have said as much about photography. *See, e.g.*, *Kaplan v. California*, 413 U.S. 115, 119 (1973); *ETW Corp. v. Jireh Publ'g, Inc.*, 332 F.3d 915, 924 (6th Cir. 2003). And it would make little sense if a parade counts as speech but a wedding photograph does not. *See Hurley*, 515 U.S. at 569 ("[T]he Constitution looks beyond written or spoken words as mediums of expression."). Just as the parade sponsors in *Hurley* sought to convey a message by the parade, Nelson seeks to convey a message through her wedding photography. Likewise, in both instances the audience is likely to understand that message. So no doubt,

"photography is speech when the photographer's artistic talents are combined to tell a story about the beauty and joy of marriage." *Chelsey Nelson Photo.*, 479 F. Supp. 3d at 557.

Louisville's arguments otherwise are unpersuasive. Louisville says that Nelson's photography is a far cry from other expressive activities, suggests that the speech is the couple's rather than Nelson's, and notes that her photography is a commercial service. Appellant Br. 25–26. But photography is more clearly expressive than other forms of recognized expression, like the parade in *Hurley* or say the nude dancing in *Barnes v. Glen Theatre, Inc.*, 501 U.S. 560, 565–66 (1991). And even if the couple might speak through the photos, Nelson does too. Just as for example both a tattoo artist and tattoo wearer can speak through a tattoo, both Nelson and the couple can speak through the wedding photos. *See Buehrle v. City of Key West*, 813 F.3d 973, 977–78 (11th Cir. 2015).

Indeed, Nelson is the one who decides when and how to take a picture. She decides how best to capture a man and woman and their marriage in a positive, celebratory light. As the district court noted, the "Pulitzer, after all, goes to the photographer, not her subjects." Op. & Order, R.130, PageID#5367. Finally, that the speech is done as a commercial service makes no difference. It is just as entitled to First Amendment protection as other speech: "a speaker is no less a

14

speaker because he or she is paid to speak." *Riley v. Nat'l Fed'n of the Blind of N.C., Inc.*, 487 U.S. 781, 801 (1988); *see also ETW Corp.*, 332 F.3d at 924.

Second, Nelson's speech is compelled by the public-accommodation law. Under it, she has to take photos of same-sex weddings. And by default, those photos are always new. They are always custom. In that respect, this case is easier than *303 Creative* because there is no possibility that Nelson's photographs could be plug and play, as with a website. *See* Oral Arg. Tr. at 7, 47. She is forced to create custom speech by the public-accommodation law.

And third, the compulsion on Nelson's speech is direct, not indirect. To start, there is no conduct separate from her speech being regulated. There is no giving of event space as in *FAIR*. There is no service or good being provided separate from the speech of the wedding photography. So there is nothing that the regulation of her speech could be incidental to. That is the same as in *Hurley* and *Dale.* That means just like in *Hurley* the public-accommodation law here has "the effect of declaring [Nelson's] speech itself to be the public accommodation." 515 U.S. at 573.

The district court made this very point. It rightly explained that there is no conduct being regulated but for the speech. The "City cares about whether, not how, Nelson takes photographs—conduct that wouldn't be undertaken but for

15

the photographer's expressive purpose and work product." Op. & Order, R.130, PageID#5369–70. And others have recognized the same point. *See, e.g.*, *Masterpiece Cakeshop, Ltd. v. Colo. C.R. Comm'n*, 138 S. Ct. 1719, 1746 (2018) (Thomas, J., concurring in part) (explaining that the *O'Brien* test "does not apply unless the government would have punished the conduct regardless of its expressive component").

Yet Louisville views things differently, arguing that the public-accommodation law regulates Nelson's conduct of serving same-sex couples. It claims the law regulates sales, not the product and services sold. Appellant Br. 23. But there is no sale of anything besides Nelson's photography services and custom photographs. The City's argument cannot square with *Hurley* and *Dale*.

In those cases, the public-accommodation laws were also regulating the parade sponsors' conduct of which groups to let march and the Boy Scouts' conduct of whom to allow as an adult leader. So Louisville's argument would apply in both—the speech allegedly was not the law's target; the conduct of granting equal access was. But of course, *Hurley* and *Dale* came out the other way because there was no conduct or service separate from the speech. And the same is true here. The conduct of providing services is not separate from the service being provided: wedding photography. And that is speech. The situation is not like *FAIR* in which

16

providing equal access to a campus—letting the military recruiters use space—was distinct from the speech of sending and posting informational emails and flyers.

That means the only way the burden on Nelson's speech could be indirect here is if she were refusing to speak based primarily on something other than message. *See Hurley*, 515 U.S. at 572. Then the burden would be indirect because Nelson would care chiefly not about the speech but about who she is serving. The issue then all comes down to whether she won't photograph same-sex weddings based on the message such photos convey or based on the status of the couple. And the answer is clear.

It is unrebutted that Nelson's objection is not status-based. For example, she will take wedding photos of a man and a woman when hired by a "couple's gay or lesbian wedding planner, parents, or other family member." Decl., R.92-2, PageID#2881. And she will provide "boutique-editing services" to "LGBT photographers" and "small businesses that are owned and operated by LGBT persons"—just not custom wedding photography that sends a message that conflicts with her beliefs. *Id.* On top of that, Nelson's objection goes beyond just same-sex marriage. She cannot photograph other weddings that would similarly send a message at odds with her beliefs. She cannot photograph a wedding that involves an

17

open or polygamous marriage. *Id.* at PageID#2878. Likewise, Nelson cannot photograph a wedding that condones racism, celebrates sacrilegious ideas, or portrays marriage negatively. *Id.* at PageID#2873–74. In short, the unrebutted evidence shows that Nelson cannot photograph same-sex weddings because of the message, not the status.

**3.** Once there, the game is up. Strict scrutiny applies. Louisville must show that forcing Nelson to photograph same-sex weddings is narrowly tailored to serve a compelling state interest. *See Fulton v. City of Philadelphia*, 141 S. Ct. 1868, 1881 (2021). And the Supreme Court has made clear that the interest in preventing discrimination cannot justify compelled speech.

In *Hurley*, the Court explained that the public-accommodation law's interest of affording equal access could not be applied to forcing expression. 515 U.S. at 578. That would not prevent discrimination but force an "approved message or discourag[e] a disfavored one." *Id.* at 579. And in *Dale*, the Court flatly said that the public-accommodation law's interest of preventing discrimination did "not justify such a severe intrusion on the Boy Scouts' rights to freedom of expressive association." 530 U.S. at 659.

If that were not enough, this Court has already held similarly in a related speech context. *See Meriwether v. Hartop*, 992 F.3d 492, 510 (6th Cir. 2021). If stopping discrimination is not a compelling interest for a public university to require a professor to use a student's preferred pronouns, then it is not one here in forcing Nelson to speak. In short, "regulating speech because it is discriminatory or offensive is not a compelling state interest, however hurtful the speech may be." *Telescope Media Grp. v. Lucero*, 936 F.3d 740, 755 (8th Cir. 2019). Preventing discrimination cannot justify forcing Nelson to speak.

That is the only interest Louisville advances here. Appellant Br. 35. So the law as applied to Nelson fails strict scrutiny on the compelling-interest prong. And it fails the narrow-tailoring prong too. The district court was spot on there. The law is both over and underinclusive. Op. & Order, R.130, PageID#5377–83.

Most obviously, the law extends beyond discriminatory conduct to cover expressive conduct. And Louisville has not shown why it could not limit the reach of its law to only non-expressive services. Louisville's argument in response is that would be unworkable because it is hard to classify expressive businesses. Appellant Br. 37. But the City need not classify every business that sells custom expressive services here. Strict scrutiny is plaintiff-specific. *See Fulton*, 141 S. Ct. at 1881.

All the City has to do is not cover the expressive services at issue: wedding photography. That would be more narrowly tailored. The City could still prohibit status-based discrimination in commercial transactions, while exempting clearly custom speech like Nelson's wedding photography.

The Amici States' experience confirms less-restrictive alternatives exist. The Amici States have been able to both protect their citizens from discrimination and still safeguard their citizens' free-speech rights. For example, it has been settled for States in the Eighth Circuit for several years now that public-accommodation laws cannot force businesses to create custom speech. *See Telescope Media*, 936 F.3d at 758. But such States have not been limited in protecting their citizens from discrimination—in the same context as here.

And on a broader level, the Amici States have consistently balanced the goals of preventing discrimination with other important interests. Kentucky, for instance, generally does not include religious organizations in its definition of a place of public accommodation when providing equal access would conflict with the organization's religious tenets. Ky. Rev. Stat. § 344.130(3). But it does require such organizations not to deny participation based on a protected class if they sponsor nonreligious activities offered to the public. *Id.* § 344.130(3)(b). In other

words, Kentucky takes pains to balance a religious organization's interest in adhering to its faith with the state interest of preventing discrimination. It, like the other Amici States, draws important distinctions to balance the conflicting interests at play. And Louisville does too in other contexts, as the district court pointed out. *See, e.g.*, Louisville Metro, Ky., Ord. § 92.04(A)(3). Louisville can—and must—do the same for Nelson's free-speech rights.

## II. The public-accommodation law applied to Nelson violates Kentucky's RFRA.

Turn to Kentucky's RFRA. Like the federal Religious Freedom Restoration Act and its "sister statute" the Religious Land Use and Institutionalized Persons Act, *Ramirez v. Collier*, 142 S. Ct. 1264, 1277 (2022), Kentucky's RFRA was enacted in response to a court decision. The federal statutes ensure greater protection for religious exercise than how the Supreme Court interpreted the First Amendment in *Employment Division v. Smith*, 494 U.S. 872 (1990). And the Kentucky statute does likewise.

Kentucky's legislature enacted its RFRA right after the Kentucky high court's decision in *Gingerich v. Commonwealth*, which held that the Kentucky Constitution's broadly worded religious-liberty protections nevertheless mapped onto the federal standard as stated in *Smith*. 382 S.W.3d 835, 844 (Ky. 2012). So like RFRA and RLUIPA, Kentucky's RFRA provides broader protection than the

21

free-exercise guarantee as interpreted by *Smith. See Maryville Baptist Church, Inc. v. Beshear*, 957 F.3d 610, 612 (6th Cir. 2020) (per curiam). Indeed, Kentucky's RFRA largely parallels those statutes, and this Court has therefore rightly relied on federal precedent in applying Kentucky's RFRA. *See id.* at 612–13.

**1.** Kentucky's RFRA provides that a government cannot substantially burden a person's "right to act or refuse to act in a manner motivated by a sincerely held religious belief" unless it satisfies strict scrutiny. Ky. Rev. Stat. § 446.350. The burden to show a substantial burden on a sincerely held religious belief is on Nelson; the burden to satisfy strict scrutiny is on Louisville. *See Ramirez*, 142 S. Ct. at 1277.

But before getting to that, Louisville raises a preliminary argument. It contends that Kentucky's RFRA does not allow for a pre-enforcement challenge. Appellant Br. 42. Louisville could not be more wrong. As this Court just explained in the federal RFRA context, the "Supreme Court has long held that parties may raise pre-enforcement challenges to a legal mandate before engaging in the act that will trigger it." *Doster v. Kendall*, 54 F.4th 398, 417 (6th Cir. 2022). And this Court has rightly allowed a pre-enforcement challenge under Kentucky's RFRA before. *See Maryville Baptist*, 957 F.3d at 616; *see also On Fire Christian Ctr., Inc. v. Fischer*, 453 F. Supp. 3d 901, 913 (W.D. Ky. 2020). Likewise, the Supreme Court

has allowed pre-enforcement actions under the federal religious-liberty laws. *See, e.g.*, *Holt v. Hobbs*, 574 U.S. 352, 335 (2015) (allowing a pre-enforcement challenge under RLUIPA). And there is nothing in the text of Kentucky's RFRA to suggest anything different.

**2.** Under Kentucky's RFRA, there is no dispute that Nelson's refusal to photograph a same-sex wedding is based on a sincerely held religious belief. And that makes sense: the unrebutted evidence shows that Nelson will not photograph a same-sex wedding because she believes that doing so "celebrates or promotes ideas dishonorable to God [and] contrary to [her] religious beliefs." Decl., R.92-2, PageID#2872.

There is, however, a dispute on whether the public-accommodation law substantially burdens the exercise of her religious beliefs. Louisville half-heartedly argues that the burden is not substantial because the public-accommodation law does not restrict Nelson's religious observance. Appellant Br. 42. And an amicus makes a more detailed argument. It says that the burden is not substantial because her actions harm others and because the public-accommodation law only affects the secular act of serving customers. Ky. Comm'n Hum. Rts. Amicus Br. 13–19.

Neither Louisville nor the amicus is right. A substantial burden is simply a significant one. And the burden is significant here. Most importantly, Nelson

faces closure of her business. If she refuses to comply, then Louisville can force compliance. Louisville Metro, Ky., Ord. § 92.08(B)(6), (8); *see also* Ky. Rev. Stat. § 344.230(2). That means if Nelson wants to continue her photography business she must violate her deeply held religious beliefs. On top of that, she faces injunctions, damages, and the like—as the district court detailed (and which the City does not dispute). Op. & Order, R.130, PageID#5393.

That easily qualifies as a substantial burden. The public-accommodation law puts Nelson to the choice of closing up shop or adhering to her religious beliefs while facing "serious disciplinary action." *See Holt*, 574 U.S. at 361. Indeed, those burdens are right on par with those listed as examples in Kentucky's RFRA: "withholding benefits, assessing penalties, or an exclusion from programs or access to facilities." Ky. Rev. Stat. § 446.350.

Louisville's argument otherwise—that the public-accommodation law does not restrict Nelson's religious observance—misses the mark. Sure, Nelson could still go to church, but Kentucky's RFRA protects much more than that. It covers the "right to act or refuse to act in a manner motivated by a sincerely held religious belief." *Id.* And it is not for Louisville to weigh how important an action or inaction is to Nelson's beliefs. *See Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 723 (2014).

Likewise, the amicus's arguments go nowhere. Whether Nelson's refusal to photograph a same-sex wedding harms others goes to whether the City has a compelling interest, not to whether the burden on Nelson's religious exercise is substantial. And it is not true that the public-accommodation law affects only the secular act of serving customers. It directly burdens Nelson's speech, which is motivated by her deeply held religious beliefs. The act of serving customers by photographing a same-sex wedding cannot be separated from her religiously motivated speech objection.

That means the City is back to having to pass strict scrutiny. And as the district court explained, that question "is by now academic." Op. & Order, R.130, PageID#5393. Because the City cannot make its strict-scrutiny showing in the compelled-speech context, it also cannot make it under Kentucky's RFRA.

But Louisville objects to that. It argues that a separate strict-scrutiny analysis is needed. Appellant Br. 43. Even if so, Nelson's religious-exercise claim under Kentucky's RFRA is linked to her speech claim. She objects to creating speech in violation of her religious beliefs. So because Louisville has not shown a compelling interest to force her to speak a message with which she disagrees, it has not shown a compelling interest to force her to speak such a message despite her religious beliefs either. *See Masterpiece Cakeshop*, 138 S. Ct. at 1738 (Gorsuch, J.,

concurring) (noting that "no bureaucratic judgment condemning a sincerely held religious belief as 'irrational' or 'offensive' will ever survive strict scrutiny"). Louisville's interest in preventing discrimination cannot justify forcing Nelson to violate her religious beliefs by speaking a message. Louisville has not met its burden under Kentucky's RFRA as applied to Nelson.

**3.** Importantly, however, that is not to say that Louisville could not do so in another case. The amicus supporting Louisville says that it does not know whether the district court's state RFRA holding "applies to *all* merchants who oppose equal service on religious grounds or only those who provide commercial services with an expressive element." Ky. Comm'n Hum. Rts. Amicus Br. 5. The answer of course is neither.

The Kentucky RFRA holding applies to Nelson alone—the inquiry is plaintiff-specific. Louisville has failed to satisfy strict scrutiny as to her. But that is not to say Louisville could not pass it as to another individual or business. And as to Nelson, her objection was to speaking in a way that conflicts with her religious beliefs. That is all the City failed to meet its burden on, and it is all the relief the district court granted. Op. & Order, R.130, PageID#5396.

In fact, the strict-scrutiny analysis could look different if Nelson's claim were that the law substantially burdened her religious beliefs by forcing her to

serve same-sex couples based on their status and not the message of the custom speech. *See Brush & Nib Studio, LC v. City of Phoenix*, 448 P.3d 890, 925 (Ariz. 2019). But that is not this case.

*   *   *

Both the Free Speech Clause and Kentucky's RFRA apply. That means Louisville's public-accommodation law must give way here. Louisville cannot force Nelson to take custom wedding photos for a same-sex wedding that send a message she disagrees with based on her religious beliefs. But that is all Louisville cannot do here. It can continue to prohibit discrimination based on sexual orientation. It can continue to require places of public accommodation to equally serve customers when the good or service being regulated is not custom speech. And even for custom speech, Louisville can continue to do so when the business's real reason is status, not message.

So Nelson's free-speech and religious-liberty rights win out over Louisville's interest in preventing discrimination here. But that win is a small one in terms of what Louisville cannot prohibit. And yet, in other terms, it is a huge one. It reaffirms the basic right common to all: the right not to speak.

## CONCLUSION

The Court should affirm.

27

Respectfully submitted by,

<u>s/ Matthew F. Kuhn</u>
Daniel Cameron                                    Office of the Kentucky
 *Attorney General*                               Attorney General
Matthew F. Kuhn                                   700 Capital Avenue, Suite 118
 *Solicitor General*                              Frankfort, Kentucky 40601
Daniel J. Grabowski                               (502) 696-5300
 *Assistant Solicitor General*                    Matt.Kuhn@ky.gov

*Counsel for the Amici States*

## ADDITIONAL COUNSEL

Steve Marshall
Attorney General
State of Alabama

Tim Griffin
Attorney General
State of Arkansas

Christopher M. Carr
Attorney General
State of Georgia

Raúl R. Labrador
Attorney General
State of Idaho

Theodore E. Rokita
Attorney General
State of Indiana

Brenna Bird
Attorney General
State of Iowa

Kris Kobach
Attorney General
State of Kansas

Jeff Landry
Attorney General
State of Louisiana

Lynn Fitch
Attorney General
State of Mississippi

Andrew Bailey
Attorney General
State of Missouri

Austin Knudsen
Attorney General
State of Montana

Michael T. Hilgers
Attorney General
State of Nebraska

Dave Yost
Attorney General
State of Ohio

Gentner Drummond
Attorney General
State of Oklahoma

Alan Wilson
Attorney General
State of South Carolina

Marty Jackley
Attorney General
State of South Dakota

Jonathan Skrmetti
Attorney General and Reporter
State of Tennessee

Ken Paxton
Attorney General
State of Texas

Sean D. Reyes                        Patrick Morrisey
Attorney General                     Attorney General
State of Utah                        State of West Virginia

## CERTIFICATE OF COMPLIANCE

I certify that this brief complies with the type-volume limitation in Fed. R. App. P. 29(a)(5) and 32(a)(7)(B) because it contains 6,010 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f) and 6th Cir. R. 32(b)(1).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface, Garamond, in 15-point font using Microsoft Word.

*s/ Matthew F. Kuhn*

**CERTIFICATE OF SERVICE**

I certify that on March 1, 2023, I electronically filed this brief with the Clerk of the Court for the United States Court of Appeals for the Sixth Circuit using the CM/ECF system. I further certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

*s/ Matthew F. Kuhn*

32