Nos. 22-5884, 22-5912

---

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

---

CHELSEY NELSON PHOTOGRAPHY, LLC; CHELSEY NELSON,

*Plaintiffs-Appellees/Cross-Appellants,*

v.

LOUISVILLE-JEFFERSON COUNTY, KY METRO GOVERNMENT, ET AL.,

*Defendants-Appellants/Cross-Appellees.*

---

On Appeal from the United States District Court
for the Western District of Kentucky, Louisville Division
Case No. 3:19-cv-00851

---

## CHELSEY NELSON PHOTOGRAPHY, LLC'S AND CHELSEY
## NELSON'S REPLY (FOURTH) BRIEF

---

Jonathan A. Scruggs
Bryan D. Neihart
ALLIANCE DEFENDING FREEDOM
15100 N. 90th Street
Scottsdale, AZ 85260
(480) 444-0020
jscruggs@ADFlegal.org
bneihart@ADFlegal.org

John J. Bursch
ALLIANCE DEFENDING FREEDOM
440 First Street NW, Suite 600
Washington, DC 20001
(616) 450-4235
jbursch@ADFlegal.org

*Attorneys for Plaintiffs-Appellees/Cross-Appellants*

# TABLE OF CONTENTS

Table of Authorities.................................................................. iii

Introduction.............................................................................1

Summary of the Argument ......................................................2

Argument.................................................................................4

I.    The Unwelcome Clause facially violates the First and
      Fourteenth Amendments and should be enjoined.........................4

      A.    Nelson has standing to facially challenge the
            Unwelcome Clause. ...................................................4

      B.    The Unwelcome Clause facially is overbroad, vague,
            and grants unbridled enforcement discretion. ......................6

            1.    The Unwelcome Clause is overbroad, bans
                  political speech on contentious issues, and
                  Louisville offers no limiting interpretation. ................6

            2.    The Unwelcome Clause is vague and grants
                  unbridled discretion because it contains unclear
                  terms that confuse even Louisville's officials. ............12

      C.    The Unwelcome Clause cannot be salvaged and should
            be facially enjoined.................................................14

II.   This Court should consider the supplemental records.................17

      A.    De novo review applies to the district court's decision to
            not consider the records based on mootness........................17

      B.    The supplemental records are relevant to Nelson's
            standing and the merits of her claims. ................................20

III.  Nelson proved nominal damages and she plausibly alleged
      compensatory damages. ................................................26

Conclusion .............................................................................30

Certificate of Compliance .......................................................................... 32

Certificate of Service ................................................................................. 33

# TABLE OF AUTHORITIES

## Cases

*Abu-Joudeh v. Schneider*,
    954 F.3d 842 (6th Cir. 2020) .................................................... 18, 19

*Act Now to Stop War & End Racism Coalition & Muslim American
    Society Freedom Foundation v. District of Columbia*,
    846 F.3d 391 (D.C. Cir. 2017)............................................................ 5

*Belle Maer Harbor v. Charter Township of Harrison*,
    170 F.3d 553 (6th Cir. 1999) .......................................................... 13

*Bigelow v. Virginia*,
    421 U.S. 809 (1975) ........................................................................ 9

*Cahoo v. SAS Analytics Inc.*,
    912 F.3d 887 (6th Cir. 2019) .......................................................... 30

*Connection Distribution Company v. Holder*,
    557 F.3d 321 (6th Cir. 2009) .......................................................... 15

*Dombrowski v. Pfister*,
    380 U.S. 479 (1965) ...................................................................... 14

*Duha v. Agrium, Inc.*,
    448 F.3d 867 (6th Cir. 2006) .......................................................... 19

*Ellis v. Cleveland Municipal School District*,
    455 F.3d 690 (6th Cir. 2006) .................................................... 17, 18

*Eubanks v. Wilkinson*,
    937 F.2d 1118 (6th Cir. 1991) ........................................................ 16

*F.C.C. v. Fox Television Stations, Inc.*,
    567 U.S. 239 (2012) ........................................................................ 4

*FEC v. Cruz*,
    142 S. Ct. 1638 (2022) ................................................................... 27

*Forsyth County v. Nationalist Movement*,
    505 U.S. 123 (1992) .................................................................. 5, 14

*Fort Des Moines Church of Christ v. Jackson*,
    215 F. Supp. 3d 776 (S.D. Iowa 2016)............................................15

*G & V Lounge, Inc. v. Michigan Liquor Control Commission*,
    23 F.3d 1071 (6th Cir. 1994) .........................................................28

*Hailes v. United Air Lines*,
    464 F.2d 1006 (5th Cir. 1972) .......................................................11

*Haywood v. DeJoy*,
    No. 21-6030, 2022 WL 16647967 (6th Cir. Oct. 6, 2022)..............19

*Holder v. Humanitarian Law Project*,
    561 U.S. 1 (2010) .............................................................................5

*Hurley v. Irish-American Gay, Lesbian & Bisexual Group of Boston*,
    515 U.S. 557 (1995) .........................................................................3

*Hyman v. City of Louisville*,
    53 F. App'x 740 (6th Cir. 2002) .....................................................22

*Janus v. American Federation of State, County, & Municipal
    Employees, Council 31*,
    138 S. Ct. 2448 (2018) .....................................................................8

*Kimble v. Hoso*,
    439 F.3d 331 (6th Cir. 2006) .........................................................19

*Kolender v. Lawson*,
    461 U.S. 352 (1983) .........................................................................4

*LidoChem, Inc. v. Stoller Enterprises, Inc.*,
    500 F. App'x 373 (6th Cir. 2012) ...................................................20

*Mason v. Adams County Recorder*,
    901 F.3d 753 (6th Cir. 2018) .........................................................11

*Masterpiece Cakeshop, Ltd. v. Colorado Civil Rights Commission*,
    138 S. Ct. 1719 (2018) ...................................................................24

*Matal v. Tam*,
    582 U.S. 218 (2017) .......................................................................14

*McKay v. Federspiel,*
    823 F.3d 862 (6th Cir. 2016) ......................................................20

*Morrison v. Board of Education of Boyd County,*
    521 F.3d 602 (6th Cir. 2008) ................................................28, 29

*National Rifle Association of America v. Magaw,*
    132 F.3d 272 (6th Cir. 1997) ......................................................30

*Peoples Rights Organization, Inc. v. City of Columbus,*
    152 F.3d 522 (6th Cir. 1998) ......................................................27

*Prime Media, Inc. v. City of Brentwood,*
    485 F.3d 343 (6th Cir. 2007) ........................................................5

*R.A.V. v. City of St. Paul,*
    505 U.S. 377 (1992) ......................................................................8

*Reno v. ACLU,*
    521 U.S. 844 (1997) ....................................................................13

*Secretary of State of Maryland v. Joseph H. Munson Co.,*
    467 U.S. 947 (1984) ....................................................................14

*Sullivan v. Benningfield,*
    920 F.3d 401 (6th Cir. 2019) ......................................................17

*Susan B. Anthony List v. Driehaus,*
    573 U.S. 149 (2014) ......................................................20, 22, 28

*Texas v. Johnson,*
    491 U.S. 397 (1989) ......................................................................7

*Travelers Indemnity Company v. Armstrong,*
    565 S.W.3d 550 (Ky. 2018) ........................................................10

*United States v. Hart,*
    70 F.3d 854 (6th Cir. 1995) ........................................................19

*United States v. Hunter,*
    459 F.2d 205 (4th Cir. 1972) ......................................................11

*United States v. Stevens,*
  559 U.S. 460 (2010) ................................................................ 8, 9, 16

*United States v. Williams,*
  553 U.S. 285 (2008) ........................................................................ 8

*Uzuegbunam v. Preczewski,*
  141 S. Ct. 792 (2021) ............................................................... 27, 29

## Statutes

42 U.S.C.A. § 2000e-3(b) ................................................................. 11

42 U.S.C.A. § 3604(c) ...................................................................... 11

Metro Ord. § 10.03 .................................................................... 10, 16

Metro Ord. § 92.02 .......................................................................... 25

Metro Ord. § 92.03(F) ...................................................................... 11

Metro Ord. § 92.05 .................................................................. 9, 10, 25

Metro Ord. § 92.06(E) ...................................................................... 11

## Other Authorities

*Indicate*, Merriam-Webster.com Dictionary .......................................... 10

Richard H. Fallon, Jr., *Making Sense of Overbreadth*, 100 Yale L.J.
  853 (1991) ................................................................................... 4

U.S. Department of Housing and Urban Development, *Advertising
  and Marketing* ............................................................................ 11

*Unwelcome*, Dictonary.com .................................................................. 12

# INTRODUCTION

Chelsey Nelson and her photography studio cross-appealed the district court's refusal (1) to facially enjoin the Unwelcome Clause, (2) to rely on supplemental records, and (3) to consider her damages claims. The district court erred on these issues. Louisville's brief does not persuade otherwise.

Louisville never defends its prior application of the Unwelcome Clause to punish a restaurant (Scooter's Triple B's) for posting an admittedly political sign. But that prosecution and Louisville's current confusion over how to interpret the Unwelcome Clause show this clause's overbreadth and vagueness. When laws give government officials unbridled discretion to chill political speech on contentious issues, as-applied injunctions—like the one issued here—are insufficient. Facial relief exists to leap-frog piecemeal litigation and enjoin laws that quell speech and impose a society-wide chill. The Unwelcome Clause deserves that fate.

The supplemental records prove the point and should be considered. They're relevant to the Unwelcome Clause and Nelson's other claims. The extant and supplemental records leave no doubt that Louisville's law credibly threatens Nelson with prosecution for photographing and blogging consistent with her beliefs on marriage. So she reasonably chilled her speech. That entitles her to nominal damages and gives her the chance to prove compensatory damages.

This Court should facially enjoin the Unwelcome Clause, consider Nelson's supplemental records, and order the district court to award Nelson nominal damages and determine her compensatory damages. The district court's order and judgment should otherwise be affirmed.

## SUMMARY OF THE ARGUMENT

Louisville's Unwelcome Clause is overbroad, vague, and gives officials unbridled enforcement discretion. *Infra* § I. Louisville already applied that clause to silence political speech *for the very reason* that the speech may have ruffled feathers. Now before this Court, Louisville tries to take a different tack. But its alternative approach fares no better. Under its current interpretation, the Unwelcome Clause acts like a statutory eclipse—covering exactly what the Denial Clause already prohibits. This new interpretation makes part of Louisville's law redundant and reveals that the Unwelcome Clause is so vague that it befuddles Louisville's own attorneys.

In reaching that conclusion and others here, this Court should consider Nelson's supplemental evidence. *Infra* § II. Those records help explain the Unwelcome Clause's deficiencies and also provide more undisputed facts that support Nelson's standing and her free-speech and Kentucky Religious Freedom Restoration Act claims. The district court never said these records were inadmissible, and this Court applies de novo review to evidentiary mootness questions. Applying that type of

review is appropriate here for many reasons, including that courts independently examine the record in First Amendment cases. *See Hurley v. Irish-Am. Gay, Lesbian & Bisexual Grp. of Bos.*, 515 U.S. 557, 567 (1995).

Finally, Nelson suffered an injury-in-fact when she chilled her speech to avoid being prosecuted under Louisville's law. *Infra* § III. That chill was objectively reasonable given the credible threat two district court judges found. That chill caused Nelson a constitutional injury—silenced speech—and entitles her to at least nominal damages. And Nelson pled compensatory damages and should be allowed to pursue those as well.[1]

---

[1] After Louisville filed its Third Brief, Nelson moved outside Kentucky because her husband found a new job. But that does not affect this Court's jurisdiction. This appeal seeks damages for past injuries. And Nelson's claims for injunctive relief remain live because her business remains open and operating in Louisville, she still receives requests to photograph weddings in Louisville, she just hired a digital marketing assistant who lives and works for her in Louisville to attract more clients there, she still markets her photography in Louisville, and she intends to return to Louisville when hired to provide her wedding celebration services there. Louisville meanwhile interprets its law to cover businesses who "serve their customers by … internet" and to "commercial photography business[es] that provide[ ] services to the public and advertise on the internet." Defs.' MPI Resp., R.15–1, PageID#773. And Louisville admitted that Nelson's desired statements—which she still displays in Louisville—violate the law. Nelson.Br.22. The other reasons that Nelson faces a credible threat remain applicable too. Nelson.Br.19–35. So Nelson needs the permanent injunction to operate her business in Louisville.

## ARGUMENT

### I. The Unwelcome Clause facially violates the First and Fourteenth Amendments and should be enjoined.

This Court should facially enjoin the Unwelcome Clause because (A) Nelson has standing to bring facial claims; (B) Nelson proved that the Unwelcome Clause is overbroad, vague, and confers unbridled discretion; and so (C) a facial injunction is the appropriate remedy.

#### A. Nelson has standing to facially challenge the Unwelcome Clause.

Nelson has standing to facially attack the Unwelcome Clause because she faces a credible enforcement threat. Nelson.Br.18–34. But Louisville adds a twist, saying Nelson's facial challenge fails because the Unwelcome Clause clearly prohibits her speech. Metro.3d.Br.31. That argument confuses overbreadth, vagueness, and unbridled discretion and glosses over Nelson's desired statements.

The overbreadth, vagueness, and unbridled discretion doctrines are Venn diagram circles—interlocking, yet distinct. *E.g.*, *Kolender v. Lawson*, 461 U.S. 352, 358 n.8 (1983) ("[V]agueness and overbreadth" are "logically related and similar doctrines."); *F.C.C. v. Fox Television Stations, Inc.*, 567 U.S. 239, 253 (2012) (vagueness doctrine addresses the "two connected but discrete" concerns of lack-of-notice and overly discretionary laws); Richard H. Fallon, Jr., *Making Sense of Overbreadth*, 100 Yale L.J. 853, 904 (1991). Those distinctions lead to different standing rules.

4

*Holder v. Humanitarian Law Project* explained that plaintiffs cannot raise facial vagueness challenges to laws that "clearly proscrib[es]" their speech. 561 U.S. 1, 20 (2010). But *Holder* then said that those plaintiffs "may have a valid overbreadth claim." *Id.* And *Holder* made clear that the plaintiffs there never argued that "the material-support statute grants too much enforcement discretion." *Id.*

For these reasons, *Holder*'s "clearly proscribed" logic does not apply to Nelson's overbreadth claim or her unbridled-discretion vagueness claim. *See Act Now to Stop War & End Racism Coal. & Muslim Am. Soc'y Freedom Found. v. District of Columbia*, 846 F.3d 391 (D.C. Cir. 2017) (interpreting *Holder* this way). *Contra* Metro.3d.Br.31.

Plaintiffs have standing to challenge overbroad and overly discretionary laws even if those laws proscribe their activities. *E.g.*, *Forsyth Cnty. v. Nationalist Movement*, 505 U.S. 123, 127, 129–37 (1992) (successful unbridled discretion challenge to ordinance that applied to demonstration organizers); *Prime Media, Inc. v. City of Brentwood*, 485 F.3d 343, 349–50 (6th Cir. 2007) (In overbreadth claims, "a plaintiff whose conduct is regulated by a rule of law is permitted to challenge the constitutionality of that particular rule …."). Neither *Holder* nor any of the other cases Louisville cites say otherwise.

Nor does *Holder* even prevent Nelson's lack-of-notice vagueness challenge. While Louisville asserts that one sentence of Nelson's statements violates the Denial Clause (Metro.3d.Br.20, 31, citing Denial

Clause language), it is unclear whether the Unwelcome Clause prohibits the rest of her statements—like her belief that "marriage is a covenant relationship before God between one man and one woman." Compl. Exs. 1, 2, RR.1–2, 1–3, PageID#58, 60. And it is unclear how the Unwelcome Clause would apply to the "materially similar" statements she'd like to post. Nelson. Decl. ¶¶ 448–54, R.92–2, PageID#2887. Anyone feeling "unwelcome" by her statements could file a complaint, and Nelson could be liable. Nelson.Br.45–47. But she and others have no way to know for sure because the Unwelcome Clause fails to give adequate notice of what it prohibits. That caused Nelson to chill her speech—by refraining from posting her desired and materially similar statements—and gives her standing. Compl. ¶¶ 253–60, R.1, PageID#32–33.

### B. The Unwelcome Clause facially is overbroad, vague, and grants unbridled enforcement discretion.

The Unwelcome Clause is facially (1) overbroad and (2) vague and grants unbridled discretion.

### 1. The Unwelcome Clause is overbroad, bans political speech on contentious issues, and Louisville offers no limiting interpretation.

The first step in overbreadth analysis is to construe the statute. Nelson did so. Nelson.Br.70–72. In Scooter's Triple B's prosecution, Louisville has too. Case Files, R.129–1, PageID#5270–5279.

Louisville prosecuted Scooter's Triple B's sign under the Unwelcome Clause. Case Files, R.129–1, PageID#5268–5305. Louisville admitted that this sign contained "political speech," acknowledged that the speech involved a "*contentious*[ ] issue of debate in today's society," labeled the political speech as "fighting words," and claimed the authority to squash that speech to prevent "secondary effects." *Id.* at PageID#5276–5278. During that prosecution, Louisville revealed the Unwelcome Clause's breadth. Louisville said:

- "[A] city is not powerless to protect its citizens from unwanted exposure to certain methods of expression which may legitimately be deemed a public nuisance." *Id.* at PageID#5274;

- "[T]he 'Unwelcome Clause' targets the type of communications that would cause fighting and disrupt the peace in places of public accommodation." *Id.* at PageID#5278; *id.* at PageID#5277; and

- The Unwelcome Clause prevents "communications that would target protected classes of individuals and potentially cause disruption in the community." *Id.* at PageID#5278.

Louisville also played fast and loose with the definition of "fighting words." Louisville cited no evidence that anyone thought the sign was "a direct personal insult or an invitation to exchange fisticuffs." *Texas v. Johnson*, 491 U.S. 397, 409 (1989) (summarizing "fighting words"

doctrine).[2] Instead, Louisville argued that the sign conveyed fighting words because it commented on a "contentious" and "highly controversial political" issue "in an incredibly charged debate." Case Files, R.129–1, PageID#5276–5277.

This interpretation shows that the clause "lacks any plainly legitimate sweep," *United States v. Stevens*, 559 U.S. 460, 472 (2010) (cleaned up), because it covers almost *any* potentially controversial comment related to *any* protected trait, *cf. Janus v. Am. Fed'n of State, Cnty., & Mun. Emps., Council 31*, 138 S. Ct. 2448, 2476 (2018) (speech on "controversial subjects" normally occupies "highest rung" of First Amendment ladder).

After Nelson identified examples of what this interpretation would cover (Nelson.Br.73), Louisville calls this fear a "straw man." Metro.3d.Br.34 n.9. Tellingly, though, Louisville never disavows enforcing its law against those examples and never disowns its prior interpretation of this clause. So those examples illuminate the clause's breadth and prove it regulates "a substantial amount of protected expressive activity." *United States v. Williams*, 553 U.S. 285, 297 (2008). And because Louisville interprets its law to regulate

---

[2] Even if Louisville limited the Unwelcome Clause to real "fighting words," the clause must still be facially invalidated because it would prohibit "fighting words" based on content and viewpoint—i.e., by banning speech on some topics but not others. *R.A.V. v. City of St. Paul*, 505 U.S. 377, 386–96 (1992).

communications, cases invalidating overbroad laws are on point here. *Contra* Metro.3d.Br.34 n.8.

Aside from hoping that this Court turns a blind eye toward the supplemental evidence, Metro.3d.Br.30, Louisville doesn't try to defend Scooter's Triple B's prosecution or its own city attorney's interpretation of the Unwelcome Clause. And for good reason. They're indefensible. So Louisville backtracks.

Before this Court, Louisville tries to cabin the Unwelcome Clause to statements the Denial Clause already prohibits. Metro.3d.Br.33–34. But that makes the Unwelcome Clause redundant and confirms that it has no "legitimate sweep" apart from the statements the Denial Clause bans. *Stevens*, 559 U.S. at 473.

Louisville justifies the Unwelcome Clause by citing cases condemning signs like "no goods or services will be sold" or "White Applicants Only." Metro.3d.Br.33. But the Denial Clause already covers those because they indicate that a service "will be refused, withheld, or denied." Metro Ord. § 92.05(B).[3] Under the canon against surplusage—which Louisville neglects in its brief—the Unwelcome Clause must ban

---

[3] The Denial Clause may ban speech about *illegal* and *constitutionally unprotected* activities. Nelson.Br.52–53. But it cannot ban speech about *legal* and *constitutionally protected* activities. *See id.*; *Bigelow v. Virginia*, 421 U.S. 809, 822 (1975) (striking advertisement restriction that "pertained to constitutional interests"). Nelson's statements fall into the latter category. She has the constitutional right to choose her photography and blog content, and can therefore explain that choice.

statements *besides denials*. Nelson.Br.71. That canon applies here because Louisville uses state law rules of construction to interpret its ordinance, and state courts construe laws according to that canon. Metro Ord. § 10.03; Nelson.Br.71 n.11; *Travelers Indem. Co. v. Armstrong*, 565 S.W.3d 550, 563 (Ky. 2018) (statutory interpretation should avoid making any part "inoperative or superfluous").

Trying again, Louisville lists phrases that "do not explicitly state that goods and services will be denied" but "convey that patrons within the protected class are not welcome." Metro.3d.Br.34. Louisville says the Unwelcome Clause bars *those* statements. But Louisville then lists examples of constructive denials. And the Denial Clause covers those too by prohibiting statements that "indicate"—i.e., "demonstrate or suggest," Merriam-Webster.com Dictionary, https://bit.ly/3Un78Y3— someone "will be refused, withheld, or denied." Metro Ord. § 92.05(B).

Louisville admitted as much. Louisville conceded that telling a customer "I wish you weren't here" because of their race is "tantamount to a refusal." Prelim. Inj. Hr'g Tr., R.52, PageID#1399. Louisville also agreed that saying "I believe only in marriage between a man or a woman … if you don't like that, get out of here" effectively denies service. *Id.* Neither of those statements *explicitly* deny a service, yet Louisville considers them to be refusals. That's the Denial Clause's bailiwick.

Consider federal anti-discrimination publication bans like the Denial Clause. *E.g.*, 42 U.S.C.A. § 2000e-3(b) (employment); 42 U.S.C.A. § 3604(c) (housing). Courts and agencies interpret those bans as prohibiting employers and housing providers from *suggesting* an applicant may be refused a job or housing based on a protected class. *See Hailes v. United Air Lines*, 464 F.2d 1006, 1009 (5th Cir. 1972) (prohibiting "the feminine term, 'stewardesses'" advertisement in the "'Help Wanted-Female' column"); *United States v. Hunter*, 459 F.2d 205 (4th Cir. 1972) (interpreting "white home" advertisement as synonymous with "white only"); U.S. Dep't of Hous. and Urban Dev., *Advertising and Marketing*, https://bit.ly/3ZLZHKU ("no wheelchairs" sign "indicates disability discrimination").

But those federal laws have no Unwelcome Clause equivalent. In fact, this Court dismissed a complaint filed under the Fair Housing Act's publication ban because the plaintiff only alleged that language in restrictive covenants "creat[ed] a feeling that" he is "unwelcome." *Mason v. Adams Cnty. Recorder*, 901 F.3d 753, 757 (6th Cir. 2018). That publication ban provided no relief for that feeling. *Id.* Nor does Louisville's own employment or housing laws have anything like the Unwelcome Clause. Metro Ord. §§ 92.03(F), 92.06(E). That the federal government and Louisville can adequately prevent employment and housing discrimination without an Unwelcome Clause reinforces the overbreadth of that clause.

11

Louisville cannot identify any legitimate basis for the Unwelcome Clause. Either the Unwelcome Clause bans contentious speech or serves a purpose indistinguishable from the Denial Clause. The first justification is massively overbroad. The second justification—which conflicts with Louisville's actual practice—fails to give effect to each word in the Unwelcome Clause, rendering that clause unnecessary.

> **2.      The Unwelcome Clause is vague and grants unbridled discretion because it contains unclear terms that confuse even Louisville's officials.**

The Unwelcome Clause is also vague and grants Louisville officials unbridled enforcement discretion for the above reasons and more. Louisville's attempt to define the terms "objectionable, unwelcome, unacceptable, or undesirable" proves the point.

Louisville cites definitions from Merriam-Webster's online dictionary. Metro.3d.Br.35. But the former Executive Director testified that Louisville has no "specific guidance on the definition[s]" of the Unwelcome Clause's terms. Boyd Dep., R.92–7, PageID#3717. So Louisville has no standard definition to guide enforcement officials. And other dictionaries define the same terms differently, creating more confusion. *E.g.*, *Unwelcome*, Dictonary.com, https://bit.ly/3m30AkQ (defining "unwelcome" as "causing dissatisfaction or displeasure").

That lack of guidance explains why Louisville's past and present Executive Directors reached opposite conclusions about whether

Scooter's Triple B's sign violated the Unwelcome Clause. Nelson.Br.75. Louisville never reconciles that discrepancy. But the discrepancy highlights the Unwelcome Clause's vagueness and unconstitutional malleability. *Belle Maer Harbor v. Charter Twp. of Harrison*, 170 F.3d 553, 558–59 (6th Cir. 1999) (term "reasonable" vague when enforcement officials could not define it).

It also explains why Louisville's attorneys disagree about the Unwelcome Clause. In Scooter's Triple B's, the Commission's counsel argued that the Unwelcome Clause prohibits contentious political speech. *Supra* § I.B.1. Now, Louisville's attorneys argue that the Unwelcome Clause forbids speech akin to denials of service while never disavowing its prior interpretation or rejecting enforcement of Nelson's All Lives Matter, pro-Israel, or op-ed examples. Metro.3d.Br.33–34 & n.9. That makes the Unwelcome Clause either overbroad—as banning political speech—or vague—as indecipherable to Louisville's own attorneys. It's at *least* one or the other (and actually both).

The Unwelcome Clause remains vague even spotting Louisville's Merriam-Webster definitions. Consider "objectionable." Louisville says that means "offensive." Metro.3d.Br.35. That brings two more problems. First, "offensive" is vague. *Reno v. ACLU*, 521 U.S. 844, 873–74 (1997) (striking "patently offensive" standard). If two wrongs don't make a right, then two vague terms don't add clarity. Second, bans on "offensive" speech are unconstitutional content-and-viewpoint restric-

13

tions. *Matal v. Tam*, 582 U.S. 218, 234, 244 (2017) (majority and plurality opinions). Enforcement officials cannot referee "the amount of hostility likely to be created by the speech" or "the public's reaction to the speech" because that vests "uncontrolled discretion" in the officials' hands. *Forsyth Cnty.*, 505 U.S. at 133–34.

Louisville's attempt to clarify the Unwelcome Clause dooms it as vague and rudderless.

### C. The Unwelcome Clause cannot be salvaged and should be facially enjoined.

The Unwelcome Clause deserves to be facially enjoined. Louisville says that facial invalidation "is strong medicine." Metro.3d.Br.32 (citation omitted). But that's the appropriate remedy for overbroad, vague, and discretionary laws that risk broadly chilling speech. Such laws cause self-censorship and cast a society-wide chill. When these laws remain on the books, "free expression—of transcendent value to all society … might be the loser." *Dombrowski v. Pfister*, 380 U.S. 479, 486 (1965); *Sec'y of State of Md. v. Joseph H. Munson Co.*, 467 U.S. 947, 956 (1984) ("[W]hen there is a danger of chilling free speech, the concern that constitutional adjudication be avoided whenever possible may be outweighed by society's interest in having the statute challenged."). The Unwelcome Clause risks these harms and should be enjoined.

Louisville's best contrary case is *Fort Des Moines Church of Christ v. Jackson*, 215 F. Supp. 3d 776 (S.D. Iowa 2016). That court declined to

facially invalidate a law like the Unwelcome Clause because it believed that some evidence was missing in the preliminary-injunction record—such as identification of "unconstitutionally broad applications of the instant provisions"—and presumed factfinders could make consistent "judgments regarding what a defendant's conduct signifies." *Id.* at 797, 799. But this record shows that Louisville applies its law to contentious speech, and that its own officials and attorneys are confused about the Unwelcome Clause's meaning. What's more, other courts have invalidated laws nearly identical to the Unwelcome Clause. Nelson.Br.74–75. This Court should join those courts.

Enjoining the clause does not require "rest[ing] on speculation." Metro.3d.Br.32 (quotations omitted). Scooter's Triple B's provides a case study of the Unwelcome Clause's unconstitutional shortcomings. *Supra* § I.B.1. In any event, "litigation by hypothetical … is sometimes *required* in free speech cases," where facial challenges "permit the claimant to strike the law in its entirety based on its application to other individuals not before the court." *Connection Distrib. Co. v. Holder*, 557 F.3d 321, 335 (6th Cir. 2009) (cleaned up).

Nor does a facial injunction "threaten the democratic process" by preventing the implementation of a law "in a manner consistent with the Constitution." Metro.3d.Br.32. Louisville offers *no* constitutional interpretation of the Unwelcome Clause. To be sure, Louisville tries to read the Unwelcome Clause as covering what the Denial Clause does.

But that requires this Court to rewrite the Unwelcome Clause, ignore its unique language, and interpret the Unwelcome Clause synonymously with the Denial Clause. That would violate Louisville's own interpretive rules which require the law to be interpreted consistent with state law (Metro Ord. § 10.03), and Kentucky applies the canon against surplusage, Nelson.Br.71 n.11. Federalism forbids federal courts from "rewrit[ing] a municipal ordinance" in this way. *Eubanks v. Wilkinson*, 937 F.2d 1118, 1125 (6th Cir. 1991). And courts may not "rewrite" a law to "conform it to constitutional requirements. *Stevens*, 559 U.S. at 481 (cleaned up).

Contrary to Louisville's insinuation, Nelson squarely presents her facial challenge to this Court. *Contra* Metro.3d.Br.30. The parties briefed the issue below. *See id.* (citing Nelson's briefs); Defs.' Mot. Summ. J. & Reply, RR.97, 111, PageID#3826–3827, 4784–4785; Pls.' Mot. to Suppl., R.119, PageID#4937–4938. And the district court evaluated these arguments. Order, R.130, PageID#5388–5390. Still, the court declined to facially enjoin the Unwelcome Clause because the court believed that the as-applied injunction provided Nelson with full relief. *Id.* When a law facially regulates speech in an overbroad, vague, and discretionary manner, the law should be facially invalidated. This Court should do so now.

**II.    This Court should consider the supplemental records.**

This Court should consider Nelson's supplemental documents (A) by applying a de novo standard of review because (B) the records add relevant facts that bolster Nelson's standing and support her claims.

### A.    De novo review applies to the district court's decision to not consider the records based on mootness.

De novo review applies to the district court's decision to deny Nelson's motion to supplement as "moot" because it did not "rel[y] on the material offered in Nelson's motion." Text Order, R.131. This Court normally applies de novo review to a district court's mootness decisions. *Sullivan v. Benningfield*, 920 F.3d 401, 407 (6th Cir. 2019). And it apples the same standard to mootness-based evidentiary decisions.

For example, in *Ellis v. Cleveland Municipal School District*, a student sued her school district after a physical altercation with her substitute teacher. 455 F.3d 690, 693 (6th Cir. 2006). The school district asked to exclude prior reports of similar incidents as inadmissible subsequent remedial measures. *Id.* at 696. But the student said those reports should be admitted. *Id.* The court denied the school district's motion, then reasoned that this decision mooted the student's motion to admit the records. *Id.* Applying de novo review, this Court held that the district court erred. *Id.* at 698. The student's motion was not moot because the reports still presented a live controversy—i.e., whether they

17

could be admitted or excluded on grounds other than subsequent remedial measures. *Id.* at 699.

That logic applies here. The district court here chose not to rely on the supplemental material. But nothing stops this Court from doing so. As Nelson explained, appellate courts must independently review the record in First Amendment cases, may consider uncited materials in the summary-judgment record, may judicially notice records at any time, and possess authority to supplement the record. Nelson.Br.68–69. All of that supports de novo review.

What's more, the district court's rulings did not "resolv[e] all claims in the litigation." Metro.3d.Br.28. The district court rejected Nelson's facial challenge and damages—those present live controversies in this cross-appeal. The supplemental records are relevant to those controversies (and others) and should be considered.

Louisville ignores *Ellis* and never engages with these other considerations. Louisville instead labels the supplemental records as "new evidence." Metro.3d.Br.29. Not so. The district court had the evidence before its judgment, but decided not to rely on it. That distinguishes this case from *Abu-Joudeh v. Schneider*, 954 F.3d 842 (6th Cir. 2020). There, this Court denied a motion to supplement evidence on appeal because the plaintiff "failed to file" the documents below. *Id.* at 847. That case is also distinguishable because the documents the plaintiff sought to admit were "subject to reasonable dispute," *id.* at

18

849, but neither Louisville—nor the district court—contests the accuracy or authenticity of the proposed records.

Louisville also relies on two cases that applied abuse-of-discretion review to rulings on motions to supplement. But the contrast between those cases and this one justifies de novo review here.

In both those cases, district courts denied motions to supplement because the proposed evidence was either filed after a deadline, was inadmissible, or presented futile facts. *Haywood v. DeJoy*, No. 21-6030, 2022 WL 16647967, at *2 (6th Cir. Oct. 6, 2022); *Duha v. Agrium, Inc.*, 448 F.3d 867, 873 (6th Cir. 2006). This Court rightly reviewed for abuse of discretion because those decisions involved the district courts' "broad discretion" to make discretionary judgments in "docket control," *Kimble v. Hoso*, 439 F.3d 331, 336 (6th Cir. 2006), and "evidentiary rulings," *United States v. Hart*, 70 F.3d 854, 858 (6th Cir. 1995).

That's not what happened here. Besides objecting to relevance, Louisville never lodged any evidentiary objection—i.e., that the evidence is inadmissible, inaccurate, or inauthentic.[4] So the district court didn't make a typical judgment call to exclude the evidence. There

---

[4] Louisville mentioned estoppel below, Metro.3d.Br.27, but never briefed it and Nelson preserved her right to supplement. Pls.' Reply in Supp. of Mot. to Suppl., R.121, PageID#5134. And though Louisville criticizes the "no more facts are needed" comment, the supplemental records provide more reasons to rule in her favor, and courts often rely on multiple facts to justify their conclusions. *Id.* (collecting cases).

was no finding that the evidence was inadmissible, unfairly prejudicial, late, or anything else. The court simply didn't rely on the evidence. Whether to rely on this evidence on summary judgment presents a purely legal question, subject to de novo review. *See LidoChem, Inc. v. Stoller Enters., Inc.*, 500 F. App'x 373, 383 (6th Cir. 2012) (evaluating deposition transcript in summary-judgment record that district court disregarded).

So de novo review applies. And this Court should consider the supplemental materials because they are relevant to Nelson's case.

### B.    The supplemental records are relevant to Nelson's standing and the merits of her claims.

The supplemental records should be considered because they reinforce Nelson's standing, her compelled-speech claim, Louisville's lack of a limiting principle, strict scrutiny, and her facial claim by adding more context. So they're not "irrelevant." *Contra* Metro.3d.Br.29.

**Standing.** The supplemental records confirm that Nelson has standing and rebut Louisville's contrary arguments.

These records show that Louisville's law "makes enforcement easier or more likely" by "allowing any member of the public to initiate an enforcement action." *McKay v. Federspiel*, 823 F.3d 862, 869 (6th Cir. 2016). That vast "universe of potential complainants" "bolster[s]" the "credibility of [Nelson's] threat." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 164 (2014).

Commission members who see objectionable "Facebook post[s]" file complaints. Case Files, R.129–1, PageID#5269. Advocacy organizations *outside* Louisville—like the Lexington Fair Housing Council—file complaints against Christian ministries *in* Louisville—like Teen Challenge. *See* Goatley Dep., R.92–7, PageID#3738 (stating organization operates in Lexington, Kentucky); Case Files, R.129–2, PageID#5306–5311. And Louisville investigates complaints from city council staffers who e-mail the Commission to "flag" incidents that constituents complain of. Case Files, R.119–3, PageID#5046–5050.

These records also refute Louisville's argument that Nelson lacks standing because she's "never been asked to photograph a same-sex wedding." Metro.3d.Br.3–4. Louisville investigates and prosecutes complaints *without* actual denials of service.

Louisville prosecuted Scooter's Triple B's for its sign without evidence that the restaurant declined any service. Case Files, R.129–1, PageID#5269, 5298, 5304. And Louisville investigated Teen Challenge without Lexington Fair Housing Council alleging a "specific instance" of a denied service. Case Files, R.129–2, PageID#5322. The organization just "found out about" the ministry's "sexual orientation policies in news reports in the LEO Weekly and the Courier-Journal newspapers" and then complained. *Id.* at PageID#5321; *id.* at PageID#5326–5331 (describing articles).

21

For these reasons, Louisville wrongly emphasizes the "known in the community" phrase from *Hyman v. City of Louisville*, 53 F. App'x 740, 744 (6th Cir. 2002). Metro.3d.Br.5. Louisville received complaints about Scooter's Triple B's and Teen Challenge *because* their views were well known. So Nelson faces a credible enforcement threat if she posts her desired statements explaining her reasons for celebrating only opposite-sex weddings. Louisville concedes the statements violate the law, *e.g.*, Metro.3d.Br.4, and anyone—the Commission, advocacy organizations from anywhere, or individuals—could complain about those statements.

Louisville's harsh investigation process supports Nelson's standing even though the law is a "non-criminal statute." *Contra* Metro.3d.Br.7. *See SBA List*, 573 U.S. at 165 (noting similarly intrusive administrative process supported standing). Louisville requires respondents to submit information, allow onsite visits, and permit staff interviews which forces respondents to pay attorneys to brief defenses and coordinate with Louisville. Case Files, R.119–3, R.129–1, R.129–2, PageID#4965–4972, 5280–5296, 5310–5314. Even without a liability finding, a complaint wreaks havoc. Teen Challenge declined to purchase a building for its ministry because "a fairness complaint" had been "filed with the Metro Human Relations Commission." Case Files, R.129–2, PageID#5340. Afterwards, Louisville found "[n]o [p]robable

[c]ause" for the complaint. *Id.* at PageID#5335. But by then the damage had been done.

Conciliations also prove that Louisville's law threaten harmful penalties that chill Nelson's speech before any probable-cause determination. Louisville settled Scooter's Triple B's complaint after the restaurant agreed to "remove the sign" stating its political beliefs. Case Files, R.129–1,PageID.5300–5301, i.e., Louisville agreed to drop the case only if the restaurant agreed to silence its speech.

**Free Speech.** Nelson's editorial discretion to create some expression but not others turns on *what* message she's being asked to communicate, not *who* asks. Nelson.Br.48–49. Nelson treats people equally by declining projects that violate her faith no matter who makes the request. *Id.* The First Amendment protects that choice. *Id.* at 50–51.

Even so, Louisville says Nelson violates the law because blogs and photographs celebrating opposite-sex and same-sex weddings are the "same product." Metro.3d.Br.16–17. On that point, the supplemental records show that Louisville treats Nelson worse than other businesses.

For example, a bulk-tire shop declined to sell a customer "a few tires" because the shop normally sold tires "in bulk." Case Files, R.119–3, PageID#4973–4979. Likewise, a physician referred a prospective patient to another medical office because he "couldn't address all of the … medical services as requested." *Id.* at PageID#5062–5064. In both

cases, Louisville found "no probable cause" because the requests exceeded their normal scope of business. *Id.* at PageID#4979, 5064.

Louisville dialed down the level of generality in these cases to focus on the *exact* service requested and the *precise* business offerings. But Louisville dials up the level of generality for Nelson to broadly describe her expression as wedding photography generally (not photography celebrating just opposite-sex weddings). But this "Goldilocks rule"—raising and lowering the level of generality just right to target certain disfavored views—doesn't work. *Masterpiece Cakeshop, Ltd. v. Colo. C.R. Comm'n*, 138 S. Ct. 1719, 1738 (2018) (Gorsuch, J., concurring). It vests endless discretion with Louisville, and allows Louisville to punish Nelson for speech the city disfavors.

**Louisville's limitless logic.** Louisville claims that Nelson's lines are "unworkable," Metro.Br.37, and invokes slippery-slope arguments to undermine Nelson's free-speech protections, *e.g.*, Metro.3d.Br.17. But those contentions misread the First Amendment, misunderstand Nelson's limiting principles, and ignore the consequences of Louisville's own position. Nelson.Br.50–53. In truth, the supplemental records demonstrate that Louisville's stance presents the real danger.

Louisville's broad definition of "public accommodation," Nelson.Br.51, led it to investigate a newspaper and a "private Catholic school." Case Files, R.119–3, PageID#4961–4962; Case Files, R.119–3, PageID#4965–4966, 4968. With that wide reading, Louisville claims the

authority to compel newspapers to print words. 30(b)(6) Dep., R.92–7, PageID#3673–3674. And Louisville could force a Catholic school to violate its religious beliefs about the immutability of sex by requiring the school to use gender identity-based pronouns or separate restrooms by gender identity. Case Files, R.129–1, PageID#5271–5273 (arguing sex-differentiated restrooms equals gender-identity discrimination). That's as limitless as it is dangerous.

By contrast, Nelson's approach protects speech no matter its viewpoint while still authorizing Louisville to stop actual status-based discriminatory conduct. Order, R.47, PageID#1227; Nelson.Br.50–52.

**Strict Scrutiny.** Louisville asserts a need to "root[ ] out all forms of discrimination," Defs.' Interrogatory Resp., R.92–7, PageID#3295, and prohibits every "single instance of discrimination," Metro.Br.36. But Louisville's law is massively underinclusive and lacks narrow tailoring as to those interests, as the supplemental records confirm. Nelson.Br.57–60.

Take underinclusivity. Louisville's law allows sex discrimination in most public accommodations and exempts private clubs altogether. Metro Ord. §§ 92.02, 92.05(C). So Louisville declined to prosecute a woman's sex-discrimination complaint against a rehabilitation facility because Louisville's law exempted that facility. Case Files, R.119–3, PageID#4980–4983. Louisville also declined to prosecute a child's disability-discrimination claim against a membership organization

because the club qualified as a "private club." *Id.* at PageID#5065–5072. These exemptions undermine any basis for compelling Nelson to speak messages contrary to her beliefs.

These exemptions also show lack of narrow tailoring. If Louisville can still pursue its interests with these limitations for sex-based classifications and private clubs, there's no reason the city cannot narrowly exempt artists like Nelson. Nelson.Br.60.

**Facial Challenge.** As explained, Scooter's Triple B's case file is also relevant to Nelson's facial challenge because it shows the Unwelcome Clause is overbroad, vague, and vests limitless enforcement discretion. *Supra* § I.

The point of these supplemental records is not to "relitigate Louisville Metro's handling of discrimination complaints filed by third parties." Metro.3d.Br.28. Those complaints have come and gone. But now those complaints affect Nelson's standing, her claims, Louisville's interests, and Louisville's interpretation of its law. Order, R.89, PageID#2189–2195 (finding case files relevant). So Nelson can rely on them. This Court should too.

## III.  Nelson proved nominal damages and she plausibly alleged compensatory damages.

Nelson deserves nominal damages because she chilled her speech to avoid a credible enforcement threat. She also adequately alleged that

this chill caused her to lose business opportunities, entitling her to pursue compensatory damages.

Louisville counters that Nelson cannot receive any damages because she "voluntarily" chilled her speech and made "her own choice" to refrain from speaking. Metro.3d.Br.37, 39. That's incorrect: Louisville's law put Nelson to a "Hobson's choice"—risk prosecution by speaking, or avoid prosecution by staying silent. *Peoples Rts. Org., Inc. v. City of Columbus*, 152 F.3d 522, 529 (6th Cir. 1998). Nelson did the latter until the preliminary injunction issued. But that choice wasn't voluntary; it was compelled by Louisville's law. For that reason, Nelson's "injuries are directly inflicted by" Louisville's "threatened enforcement of the provisions [she] now challenge[s]." *FEC v. Cruz*, 142 S. Ct. 1638, 1647 (2022) (rejecting argument that plaintiff governed by a regulation "manufacture[d] standing by voluntarily taking costly and burdensome measures"). Nominal and compensatory damages redress that chill.

Start with nominal damages. In *Uzuegbunam v. Preczewski*, the Supreme Court held that "nominal damages" redress constitutional violations. 141 S. Ct. 792, 802 (2021). *Uzuegbunam* only analyzed the redressability element of standing, not injury-in-fact. *Id.* Even so, Louisville tries to distinguish *Uzuegbunam* by arguing that the plaintiff

27

"had actually been the target of an enforcement action."

Metro.3d.Br.38.[5]

But that just means the plaintiff suffered an injury. So has

Nelson. Two district court judges found that Louisville's law caused

Nelson an injury-in-fact. Orders, RR.47, 130, PageID#1207–1211, 5359–

5364. For standing purposes, an injury is an injury whether "actual"—

as in *Uzuegbunam*—or "imminent" (defined as "substantial risk" of

harm)—as here. *SBA List*, 573 U.S. at 158. There's no legal difference

between a speaker's objective chill injury sufficient to support an

injunction and the same objective chill injury to support nominal

damages. The same injury occurs: chilled speech. And this Court

recognizes as "well-settled" that "a chilling effect on one's constitutional

rights constitutes a present injury in fact." *G & V Lounge, Inc. v. Mich.*

*Liquor Control Comm'n*, 23 F.3d 1071, 1076 (6th Cir. 1994).

Like the district court, Louisville mentions *Morrison v. Board of*

*Education of Boyd County*, 521 F.3d 602 (6th Cir. 2008). That case is

different. The student's chill was "subjective" because the school never

---

[5] *Uzuebunam* featured two plaintiffs. The Supreme Court remanded the nominal damages claim of the second plaintiff (against whom the speech zone policy had never been enforced). 141 S. Ct. at 797, 802 n.*. The district court was to determine "in the first instance" whether the second plaintiff sustained an injury. *Id.* at 802 n.*. If so, he could pursue nominal damages. *Id.* That further supports awarding Nelson nominal damages because Louisville's law injured her. Orders, RR.47, 130, PageID#1207–1211, 5359–5364.

suggested that it "would have punished [him]" for his desired speech and the student had no evidence supporting any threat. *Id.* at 607, 610.

Meanwhile, Nelson's chill was objectively reasonable because Louisville concedes that Nelson operates a public accommodation, admits that her desired activities violate the law, and actively enforces its law with no exceptions. Nelson.Br.21–30. These facts and others made her decision to chill her speech objectively reasonable given the credible threat. Order, R.130, PageID#5359–5364.

*Uzuegbunam* says nominal damages redress that injury. Other circuits do too—even in the pre-enforcement context (something Louisville omits). Nelson.Br.76. So this Court should reinstate Nelson's nominal-damages claim and order the district court to enter nominal damages in her favor. Because Nelson already proved "a constitutional injury chilling her speech," Order, R.130, PageID#5364, there's nothing more she need prove to receive nominal damages, *Uzuegbunam*, 141 S. Ct. at 802.

Nelson should also be allowed to present compensatory damage evidence. Nelson alleged that Louisville's law caused her to limit her advertisements and social-media engagement, to refuse to respond to posts in a professional online form, and to lose business opportunities. Compl. ¶¶ 234–59, 282, R.1, PageID#30–33, 36. Because the district court dismissed this relief at the motion-to-dismiss stage, this Court must construe these allegations to Nelson's benefit, accept them as true,

and draw reasonable inferences in Nelson's favor. *Cahoo v. SAS Analytics Inc.*, 912 F.3d 887, 897 (6th Cir. 2019).

Under that standard, it is reasonable to infer that if Nelson had been free to advertise and network without threat of punishment, and felt empowered to respond to inquiries in a professional forum, she would have expanded her business. *See Nat'l Rifle Ass'n of Am. v. Magaw*, 132 F.3d 272, 281 (6th Cir. 1997) (noting "economic harm" from law requiring manufacturer to "refrain from sales and marketing").

In arguing otherwise, Louisville relies on facts outside the complaint and speculates that "Nelson has not experienced any growth whatsoever in her business." Metro.3d.Br.37–38. But that's inappropriate under a motion-to-dismiss standard. Nelson never had the chance to develop evidence on this point because the claim was dismissed before discovery. She should have that opportunity.

In the end, Nelson proved that Louisville's law violated her First Amendment rights. That entitles her to nominal damages. And Nelson plausibly alleged that Louisville's law caused her to lose business. Her compensatory damages claim should be reinstated.

## CONCLUSION

Louisville uses the Unwelcome Clause to punish disfavored political speech, but now offers an alternative interpretation that only muddies the water about what the Unwelcome Clause prohibits. This

Court should facially enjoin that clause. Along the way, this Court should consider the supplemental records for more insights, and award Nelson nominal damages and reinstate her compensatory damages to remedy her chilled-speech injury. Otherwise, the district court's order and judgment should be affirmed in all respects.

Dated: April 14, 2023

Respectfully submitted,

*s/John J. Bursch*
JOHN J. BURSCH
440 First Street NW, Suite 600
Washington, DC 20001
(616) 450-4235
jbursch@ADFlegal.org

JONATHAN A. SCRUGGS
BRYAN D. NEIHART
ALLIANCE DEFENDING FREEDOM
15100 N. 90th Street
Scottsdale, AZ 85260
(480) 444-0020
jscruggs@ADFlegal.org
bneihart@ADFlegal.org

*Attorneys for Plaintiffs-*
*Appellees/Cross-Appellants*

**FRAP 32(g)**

## CERTIFICATE OF COMPLIANCE

This brief complies with the word limit of Fed. R. App. P. 32(a)(7)(B) because this brief contains 6,499 words, excluding parts of the brief exempted by Fed. R. App. P. 32(f) and 6 Cir. R. 32(b).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in Word 365 using a proportionally spaced typeface, 14-point Century Schoolbook.

Dated: April 14, 2023

*s/John J. Bursch*
John J. Bursch

*Attorney for Plaintiffs-Appellees/Cross-Appellants*

## CERTIFICATE OF SERVICE

I hereby certify that on April 14, 2023, I electronically filed the foregoing brief with the Clerk of the Court for the United States Court of Appeals for the Sixth Circuit by using the appellate CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

*s/John J. Bursch*
John J. Bursch

*Attorney for Plaintiffs-Appellees/Cross-Appellants*