Nos. 22-5884, 22-5912

---

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

---

CHELSEY NELSON PHOTOGRAPHY, LLC; CHELSEY NELSON,

*Plaintiffs-Appellees/Cross-Appellants,*

v.

LOUISVILLE-JEFFERSON COUNTY, KY METRO GOVERNMENT, ET AL.,

*Defendants-Appellants/Cross-Appellees.*

---

On Appeal from the United States District Court
for the Western District of Kentucky, Louisville Division
Case No. 3:19-cv-00851

---

## CHELSEY NELSON PHOTOGRAPHY, LLC'S AND CHELSEY
## NELSON'S SUPPLEMENTAL BRIEF

---

Jonathan A. Scruggs
Bryan D. Neihart
ALLIANCE DEFENDING FREEDOM
15100 N. 90th Street
Scottsdale, AZ 85260
(480) 444-0020
jscruggs@ADFlegal.org
bneihart@ADFlegal.org

John J. Bursch
ALLIANCE DEFENDING FREEDOM
440 First Street NW, Suite 600
Washington, DC 20001
(616) 450-4235
jbursch@ADFlegal.org

*Attorneys for Plaintiffs-Appellees/Cross-Appellants*

# TABLE OF CONTENTS

Table of Authorities..............................................................................ii

Introduction.........................................................................................1

Relevant background............................................................................1

Argument.............................................................................................3

I.    Under *303 Creative*, Nelson has standing to obtain equitable relief and nominal damages because she faced—and still faces—a similar enforcement threat.................................3

II.   Under *303 Creative*, Nelson's claims are ripe based on the undisputed facts in this complete record........................................8

III.  Under *303 Creative*, the Accommodations Provision violates the First Amendment by compelling Nelson to create speech expressing a message she does not believe....................................8

      A.    Nelson's photographs and blogs are pure speech...................9

      B.    Louisville's law alters Nelson's speech. ...............................10

IV.   Under *303 Creative*, the Accommodations and Publication Provisions are intertwined, resolving Nelson's challenge to the latter......................................................................................12

V.    Under *303 Creative*, Louisville's effort to compel Nelson's speech violates the First Amendment *per se*, or at least fails strict scrutiny. ..................................................................................13

Conclusion .........................................................................................15

Certificate of Compliance...................................................................17

Certificate of Service .........................................................................18

Appendix.............................................................................................19

# TABLE OF AUTHORITIES

## Cases

*303 Creative LLC v. Elenis,*
  6 F.4th 1160 (10th Cir. 2021) ........................................................5, 6

*303 Creative LLC v. Elenis,*
  No. 21-476, 2023 WL 4277208 (U.S. June 30, 2023) ............ passim

*Boy Scouts of America v. Dale,*
  530 U.S. 640 (2000) ........................................................................13

*Braidwood Management, Inc. v. Equal Employment Opportunity Commission,*
  70 F.4th 914 (5th Cir. 2023) ....................................................4, 5, 6

*Downtown Soup Kitchen v. Municipality of Anchorage,*
  576 F. Supp. 3d 636 (D. Alaska 2021) ...............................................7

*Hurley v. Irish-American Gay, Lesbian & Bisexual Group of Boston,*
  515 U.S. 557 (1995) ......................................................................8, 13

*Morrison v. Board of Education of Boyd County,*
  521 F.3d 602 (6th Cir. 2008) .............................................................7

*Speech First, Inc. v. Schlissel,*
  939 F.3d 756 (6th Cir. 2019) .............................................................5

*Vitagliano v. County of Westchester,*
  No. 23-30, 2023 WL 4095164 (2d Cir. June 21, 2023) .......................4

## Statutes

C.R.S. § 24-34-306(1)(a) ..........................................................................6

Metro Ord. § 92.02 ...................................................................................3

## Other Authorities

Creighton Meland & Stephen Cranney, *Measuring and Evaluating Public Responses to Religious Rights Rulings*, 23 Fed. Soc'y Rev. 333 (2022) ...............................................................................14

ii

## INTRODUCTION

The Supreme Court's decision in *303 Creative LLC v. Elenis*, No. 21-476, 2023 WL 4277208 (U.S. June 30, 2023) definitively resolves Chelsey Nelson's free speech and nominal damages claims in her favor.[1] The district court correctly held that Nelson's case "mirrors" *303 Creative*. Order, R.130, PageID#5353. Louisville admits that Nelson's challenge is "nearly identical" to the one in *303 Creative*. Metro.Abeyance.Mot.2. And Nelson agrees. Because of *303 Creative*, this Court should conclude that Nelson has standing—just like the plaintiff in *303 Creative*—and rule that Louisville's public-accommodations law violates Nelson's freedom of speech—just like Colorado's public-accommodations law did as to the plaintiff in *303 Creative*.

## RELEVANT BACKGROUND

*303 Creative* and Nelson's case involve almost identical laws, facts, issues, and arguments. Start with the laws. Colorado's and Louisville's laws define public accommodations similarly, and each government broadly interprets its law to apply to custom expression. *See* App. Both laws include similar Accommodations and Publication Provisions. *Id.* And both governments defended their ability to use

---

[1] *303 Creative* leaves unresolved Nelson's cross-appeal involving her Kentucky Religious Freedom Act claim, facial challenge, compensatory damages, and supplemental documents. But Nelson should win on those issues too. *See, e.g.*, Nelson.4th.Br.6–30.

these laws to (a) compel artists to create original content that violates their beliefs and (b) silence the artists' speech about marriage.

On to the facts. Lorie Smith owns 303 Creative and is an artist, like Nelson, who uses images and words. *303 Creative*, 2023 WL 4277208, at *4. Like Nelson, Smith hoped to create custom expression—in her case websites—celebrating weddings consistent with her religious beliefs and to post a statement explaining her reasons for this choice. *Id.* at *4–5. And, like Nelson, Smith challenged a public-accommodations law before enforcement because she faced a credible threat that Colorado would punish her if she designed custom artwork in line with her beliefs about marriage. *Id.*

Colorado put Smith in a dilemma: "If she wishes to speak, she must either speak as the State demands or face sanctions for expressing her own beliefs." *Id.* at *9. Following longstanding precedent, the Supreme Court held that this choice "represent[ed] an impermissible abridgment of the First Amendment's right to speak freely." *Id.* Louisville's law imposes the same burdens on Nelson's speech.

Specifically, (I) Nelson faces a credible enforcement threat for the same reasons Smith did, and more, and so deserves nominal damages and equitable relief; (II) Nelson's claims are ripe based on this complete record where no party disputes relevant facts; (III–IV) Louisville violates the First Amendment by compelling Nelson to create content celebrating a view of marriage she does not believe and by banning her

from explaining that choice; and (V) Louisville's law as applied to Nelson is per se unconstitutional, or, at least, fails strict scrutiny.

## ARGUMENT

### I.    Under *303 Creative*, Nelson has standing to obtain equitable relief and nominal damages because she faced—and still faces—a similar enforcement threat.

Nelson has standing, just like Smith did. In *303 Creative*, the Supreme Court analyzed standing by first looking at the text of Colorado's law. Smith was an object of that law because it defined "public accommodation broadly to include almost every public-facing business." *303 Creative*, 2023 WL 4277208, at *5. The law prohibited public accommodations from "denying the full and equal enjoyment of [their] goods and services to any customer based on … sexual orientation," which arguably forced Smith "to create websites celebrating marriages she does not endorse." *Id.*

Louisville's law uses similarly broad language and works the same way. Indeed, Louisville conceded that Nelson's photography studio qualifies as a public accommodation under its broad definition. Metro Ord. § 92.02; Defs.' Admissions, R.104–4, PageID#4596; Nelson.Br.21–23. That's why the district court called it "a head-scratcher," Order, R.130, PageID#5360, for Louisville to argue that its law is not "targeted at individuals like Nelson, i.e. wedding photographers." Metro.Br.15.

3

Louisville has also repeatedly asserted that Nelson's desired activities violate the law. Nelson.Br.21–23.[2]

After concluding that Colorado's law applied to Smith and chilled her desired speech, the Supreme Court considered four factors that it deemed relevant—but not necessary—for Smith's credible enforcement threat. These factors confirm that Nelson faces a credible threat too.

*First*, "Colorado's record of past enforcement actions" supported Smith's standing. *303 Creative*, 2023 WL 4277208, at *5. So too here. Louisville admits it "actively enforces its antidiscrimination law," including "numerous complaints of discrimination on the basis of sexual orientation." Metro.Br.6, 15. *See also* Nelson.Br.27 (reciting evidence).

Even so, Louisville rejects Nelson's standing because it has never prosecuted a "refusal to provide services to a same-sex wedding." Metro.Br.15. But mirror-image prosecutions aren't necessary. As the

---

[2] Two recent circuit court decisions confirm Nelson's standing. These decisions applied an enforcement presumption because the plaintiffs were the object of the challenged law, the law arguably forbade their activities, and the government actively enforced the law and refused to disavow. *See Vitagliano v. Cnty. of Westchester*, No. 23-30, 2023 WL 4095164, at *6 (2d Cir. June 21, 2023) (per curiam) ("[W]e may presume that Vitagliano faces a credible threat of enforcement" because the county never disavowed enforcement); *Braidwood Mgmt., Inc. v. Equal Emp. Opportunity Comm'n*, 70 F.4th 914, 926–27 (5th Cir. 2023) (standing where plaintiffs arguably violated "EEOC guidance" and the EEOC had enforced the law and never disavowed); *id.* at 927 n.23 (relying on Tenth Circuit's standing analysis in *303 Creative*). This Court should follow the same logic. Nelson.Br.23–27.

Tenth Circuit said as to Smith's standing, "[a]lthough [she] create[s] websites—not cakes—this distinction does not diminish [her] fear of prosecution; there is no indication that Colorado will enforce CADA differently against graphic designers than bakeries." *303 Creative LLC v. Elenis*, 6 F.4th 1160, 1174 (10th Cir. 2021). Louisville's claim that it has never before prosecuted a same-sex-wedding case is irrelevant when it admits it actively enforces its law.[3]

*Second*, Colorado never disavowed future enforcement. *303 Creative*, 2023 WL 4277208, at *6. Neither has Louisville. Metro.Br.27–28. And Louisville is wrong to suggest that asking it to disavow "flips the burden of proof." Metro.3d.Br.2 n.3. Nelson met her burden to establish a credible threat. Nelson.Br.23–34. Louisville must then rebut that threat, including by disavowing. It has steadfastly refused.

*Third*, Colorado's law allowed "state officials or private citizens" to file complaints. *303 Creative*, 2023 WL 4277208, at *5. Same here. Practically anyone can file a complaint against Nelson. Nelson.Br.28–30. Louisville tries to limit this universe by claiming the complainant must be "aggrieved." Metro.Br.14–15. But Colorado's law had the same feature. C.R.S. § 24-34-306(1)(a) ("Any person claiming to be aggrieved

---

[3] *See Speech First, Inc. v. Schlissel*, 939 F.3d 756, 766 (6th Cir. 2019) (finding pre-enforcement plaintiffs had standing where defendants had investigated "sixteen disciplinary cases" generally under challenged policy); *Braidwood Mgmt.*, 70 F.4th at 927 (one prior enforcement action against sufficed "even if the facts would not be precisely the same").

… may … file with the division a verified written charge ….”). And that did not shrink the relevant complainant pool for either the Supreme Court or Tenth Circuit. *See 303 Creative LLC*, 6 F.4th at 1174.

*Fourth*, Colorado’s law carried civil penalties including $500 fines, cease-and-desist orders, and other mandates. *303 Creative*, 2023 WL 4277208, at *5. Louisville’s law imposes more drastic penalties. Order, R.130, PageID#5360–5361, 5393. The Supreme Court’s reliance on civil penalties alone vaporizes Louisville’s demand that pre-enforcement plaintiffs point to criminal penalties for standing. Metro.Br.18.

*303 Creative* supports Nelson’s standing for other reasons too. For example, the Supreme Court found standing without relying on any request sent to Smith to create a website celebrating a same-sex wedding. *303 Creative*, 2023 WL 4277208, at *5–7 (never mentioning a request). So Louisville was wrong to make this a requirement for Nelson. Metro.Br.7 (demanding a request).[4] And the Supreme Court confirmed that Colorado’s Accommodations and Publication Provisions are intertwined. *303 Creative*, 2023 WL 4277208, at *5 n.1. The same is true of Louisville’s similar Accommodations and Publication provisions. That means Nelson can challenge the former provision because she has standing to challenge the latter. Nelson.Br.31.

---

[4] *See also Braidwood Mgmt.,* 70 F.4th at 919 (employers had pre-enforcement standing without “evidence of any job applicant or employee … who has claimed he was discriminated against”).

Next, Smith proved a credible threat even though she had "yet to carry out her plans," had never entered the wedding market, and had never been prosecuted. *303 Creative*, 2023 WL 4277208, at *4–5. These points refute Louisville's standing arguments that Nelson must photograph many weddings, that she must point to prior prosecutions, and that Louisville must have heard of her before her lawsuit. Metro.Br.7–8; Metro.3d.Br.10.

What's more, *303 Creative* justifies Nelson's right to nominal damages (along with the relief ordered by the district court). Its analysis shows why *Morrison v. Board of Education of Boyd County* is distinguishable: because the plaintiff there never faced a realistic prosecution threat and so never had standing. 521 F.3d 602, 610–11 (6th Cir. 2008). In contrast, as *303 Creative* confirms, Nelson had standing when she filed suit, the law objectively chilled her speech at that time, and she was irreparably injured, thus justifying nominal damages for that constitutional violation now. Nelson.4th.Br.26–30.[5]

---

[5] *See Downtown Soup Kitchen v. Municipality of Anchorage*, 576 F. Supp. 3d 636, 662 (D. Alaska 2021) (finding standing to seek nominal damages for past chill based on "well-founded fear of prosecution" at time lawsuit filed even though that fear removed later).

**II.    Under *303 Creative*, Nelson's claims are ripe based on the undisputed facts in this complete record.**

At the Supreme Court, Colorado said Smith's case wasn't ripe for the same reasons Louisville suggests Nelson's case isn't. *Compare* Br. for Resp'ts, *303 Creative*, No. 21-476 (U.S. Aug. 12, 2022), 2022 WL 3597176, at \*24, *with* Metro.Br.21–22. But the Supreme Court had more than enough facts to resolve Smith's case. That's why it proceeded. The record here is even more robust.[6] The district court correctly concluded that no "significant factual issues remain unaddressed in the record," making Nelson's "challenge … ripe for adjudication." Order, R.130, PageID#5365.

**III.    Under *303 Creative*, the Accommodations Provision violates the First Amendment by compelling Nelson to create speech expressing a message she does not believe.**

The *303 Creative* Court followed the two-part framework outlined in *Hurley v. Irish-American Gay, Lesbian & Bisexual Group of Boston*, 515 U.S. 557 (1995), to conclude that Colorado compelled Smith's speech. Nelson.Br.50–52 (describing test). First, the Court held that Colorado's law regulated Smith's customized websites—her speech. *303 Creative*, 2023 WL 4277208, at \*9, \*11. Second, Colorado's law altered Smith's desired message. *Id*. at \*13, \*15. Nelson meets that test here.

---

[6] Louisville may invoke Colorado's stipulations as a difference between Smith's and Nelson's cases. They're not. No party here disputes any material fact, and those facts overlap with and exceed the stipulations in *303 Creative*.

Her photographs and blogs are her speech. And Louisville's law seeks to change Nelson's message about marriage. That violates the First Amendment.

### A.    Nelson's photographs and blogs are pure speech.

*303 Creative* recognized that some expression qualifies as "pure speech"—"pictures, films, paintings, drawings, and engravings, [and] oral utterance and the printed word." *Id.* at *8 (cleaned up). Smith's websites fell within this because they contain "images, words, symbols, and other modes of expression." *Id.* She designed each website as an "original, customized" creation, and each website "communicate[s] ideas" about what she "understands to be a true marriage." *Id*.

Nelson's photographs and blogs likewise qualify as pure speech. After all, in *303 Creative*'s words, photographs are "pictures," and blogs are "the printed word." *Id.* Just like Smith, Nelson creates photographs and writes each blog as an original expression of her view on marriage. Nelson.Br.36–38. She uses her artistic judgment throughout her creative process to tell uplifting stories celebrating her beliefs about God's design for marriage. Nelson Decl. ¶¶ 208–327, R.92–2, PageID#2854–2872; Nelson Dep., R.92–7, PageID#3306–3324.

Louisville suggests that Nelson's photographs and blogs are not speech because she creates them for money. Metro.3d.Br.12. At most, Louisville says Nelson's works are *her client's* speech. Metro.Br.26, 32.

But the Supreme Court rejected that very argument in *303 Creative*. It held the First Amendment protects "those who seek profit" including "artists." *303 Creative*, 2023 WL 4277208, at \*15. Smith's websites were also her speech even though she worked with clients. *Id.* at \*9. The same is true of Nelson. Nelson.Br.47.

## B.  Louisville's law alters Nelson's speech.

The Supreme Court next concluded that Colorado's law threatened to alter Smith's desired message. If she "offers wedding websites celebrating marriages she endorses, the State intends to force her to create custom websites celebrating other marriage she does not." *303 Creative*, 2023 WL 4277208, at \*9 (cleaned up). Louisville's law does the same by forcing Nelson to create photographs and blogs promoting a view of marriage different from the view she wants to celebrate. Nelson.Br.38–41. Under *303 Creative*, that's compelled speech. It's really that simple.

Louisville resists this conclusion by distorting the reasons Nelson declines to express certain views. According to Louisville, Nelson's decision to decline to create certain content is "inextricable" from the sexual orientation of the client requesting that content. Metro.Br.31. Louisville concludes that Nelson's objection hinges on the client's status, not the message.

Not so. Nelson evaluates each request based on the message requested. Nelson.Br.8. She won't create content that violates her beliefs for anyone. *Id.* But if she's asked to create content that aligns with her beliefs, she'll do so no matter who asks. Nelson.Br.8–9. The Supreme Court recognized—and approved—this "status" and "message" distinction. *303 Creative*, 2023 WL 4277208, at *12 n.3.

In other places, *303 Creative* reads like a line-by-line rebuttal of Louisville's briefs and arguments. Consider the following.

| Louisville's Claim | Supreme Court's Response |
|---|---|
| The law doesn't affect Nelson's speech because it doesn't dictate "style or tone" or "how Nelson takes photographs." Metro.Br.23, 28. | Colorado's law compelled speech even though it didn't select the words or graphics on Smith's websites. *Compare 303 Creative*, 2023 WL 4277208, at *9, *13 *with id.* at *29 (Sotomayor, J., dissenting). |
| The law regulates Nelson's conduct. Metro.Br.12, 28; Metro.3d.Br.13. | Colorado's law regulated speech when the state applied it to Smith's "expressive activities" and then sought to "compel" that expression. *Id.* at *13. |
| The law imposes an "incidental" effect on Nelson's speech. Metro.Br.12, 33–34. | There was nothing "incidental" about Colorado's interference with Smith's speech. *Id.* at *11. |
| Opposite-sex and same-sex photographs are the "same product." Metro.3d.Br.16–17. | The "same product" test doesn't apply to custom expression. *Id.* |
| *Hurley* differs. Metro.Br.31–32. | *Hurley* controls. *Id.* at *7, *9–11. |

| | |
|---|---|
| Cases involving school classrooms, non-expressive associations, and law firms apply. Metro.Br.24, 25, 27, 29, 33, 35, 37, 40. | "[C]ontext matters" and these cases don't govern "when a law is used to force individuals to toe the government's preferred line when speaking." *Id.* at *14 n.6. |

The Supreme Court also rejected Colorado's slippery-slope arguments, which were identical to Louisville's. Louisville may apply its law to "innumerable goods and services." *303 Creative*, 2023 WL 4277208, at *10. And Louisville may continue to prohibit "status-based discrimination unrelated to expression." *Id.* at *12 n.3. But Louisville cannot compel speech, including Nelson's photographs and blogs.

## IV. Under *303 Creative*, the Accommodations and Publication Provisions are intertwined, resolving Nelson's challenge to the latter.

The Supreme Court's decision also resolves Nelson's challenge to the Publication Provision. Like Colorado in *303 Creative*, Louisville "concede[d] that its authority to apply the" Publication Provision to Nelson "stands or falls with its authority to apply the" Accommodations Provision. *303 Creative*, 2023 WL 4277208, at *5 n.1; Metro.Br.40. The Accommodations Provision cannot dictate the content of Nelson's expression. *Supra* § III. Thus, the Publication Provision cannot prohibit Nelson from explaining her reasons for only creating certain content. *303 Creative*, 2023 WL 4277208, at *5 n.1; Nelson.Br.52–53.

This logic doesn't authorize businesses to post signs turning away an entire class of people, as Louisville wrongly suggests. Metro.Br.40.

That's "[p]ure fiction." *303 Creative*, 2023 WL 4277208, at *14. Rather, this logic ensures that speakers can explain the nature of their expression. Parades can publish float requirements. *Hurley*, 515 U.S. at 569–70. Expressive organizations can announce membership criteria. *Boy Scouts of Am. v. Dale*, 530 U.S. 640, 648 (2000). And Nelson—and other artists—can explain what content they can and cannot create.

## V.    Under *303 Creative*, Louisville's effort to compel Nelson's speech violates the First Amendment *per se*, or at least fails strict scrutiny.

Louisville's law violates Nelson's free speech by compelling her to create content that violates her beliefs. No further analysis is needed. The law fails as applied. At the very least, *303 Creative* confirms that the law cannot pass strict scrutiny here.

The Supreme Court adopted a per se rule against public-accommodations laws compelling ideological speech. These laws are not "immune" from the First Amendment when they "compel speech." *303 Creative*, 2023 WL 4277208, at *11. And when public-accommodations laws and the First Amendment "collide," "there can be no question which must prevail"—the First Amendment. *Id.* Full stop.

This per se rule underscores why the district court rightly excluded Professor Netta Barak-Corren's testimony. Her testimony lacks legal relevance. None of Louisville's imagined interests suffice to compel Nelson's speech. *See* Order, R.130, PageID#5386–5387 (finding

no "authority regarding the appropriateness of opinion testimony in this context"); Creighton Meland & Stephen Cranney, *Measuring and Evaluating Public Responses to Religious Rights Rulings*, 23 Fed. Soc'y Rev. 333, 360–64 (2022) (explaining dangers of Barak-Corren's theory).

Even if strict scrutiny applies to Nelson's free-speech claim, *303 Creative* debunks Louisville's interests. Recall that Louisville mentions three interests: (1) ending discrimination; (2) ensuring equal access; and (3) stopping dignitary harms. Nelson.Br.56–57.

First, the Supreme Court confirmed the difference between "status-based discrimination (forbidden)" and "the right of a speaker to control his own message (protected)." *303 Creative*, 2023 WL 4277208, at *12 n.3. Nelson's decisions about what to create fall in the latter category, so Louisville has no interest in dictating Nelson's expression. *Id.* at *12. This conclusion further supports the district court's decision to exclude Barak-Corren's testimony. She admitted that her study didn't capture message-based—i.e., nondiscriminatory—objections to celebrating same-sex weddings. Nelson.Br.66.

Second, the government cannot justify an equal-access interest by intruding on a particular artist's unique expression. *303 Creative*, 2023 WL 4277208, at *11. Otherwise, "the better the artist … the more easily his voice could be conscripted to disseminate the government's preferred message." *Id.* Louisville argues that requiring "equal access" to "custom

14

or expressive services" does not burden expression. Metro.Br.24. But that's wrong in this case. *Supra* § III.

Finally, Louisville's dignitary-harms interest falls flat. The First Amendment protects choices to speak or remain silent even if they are "misguided, "likely to cause anguish or incalculable grief," or "hurtful." *303 Creative*, 2023 WL 4277208, at *8, *16 (cleaned up). When confronted with those choices, "tolerance, not coercion, is our Nation's answer." *Id.* at *16.

In short, whether read as a per se ban on compelled speech or as an application of strict scrutiny, *303 Creative* confirms that Louisville's law fails as applied to Nelson.

## CONCLUSION

The Supreme Court's decision in *303 Creative* proves the district court correctly granted Nelson injunctive and declaratory relief and upheld the First Amendment's promise. "The First Amendment envisions the United States as a rich and complex place where all persons are free to think and speak as they wish, not as the government demands." *Id.* Smith, Nelson, the "Muslim movie director," the "atheist muralist," the LGBT photographer, and many others of all views benefit from this protection. *Id.* at *9. This Court should affirm, consider the supplemental materials, facially enjoin the Unwelcome Clause, and reinstate Nelson's damages.

15

Dated: July 13, 2023

Respectfully submitted,

*s/John J. Bursch*
JOHN J. BURSCH
440 First Street NW, Suite 600
Washington, DC 20001
(616) 450-4235
jbursch@ADFlegal.org

JONATHAN A. SCRUGGS
BRYAN D. NEIHART
ALLIANCE DEFENDING FREEDOM
15100 N. 90th Street
Scottsdale, AZ 85260
(480) 444-0020
jscruggs@ADFlegal.org
bneihart@ADFlegal.org

*Attorneys for Plaintiffs-Appellees/Cross-Appellants*

**FRAP 32(g)**

**CERTIFICATE OF COMPLIANCE**

This brief complies with the word limit set out in the Court's June 30, 2023 Order because this brief contains 15 pages, excluding parts of the brief exempted by Fed. R. App. P. 32(f) and 6 Cir. R. 32(b).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in Word 365 using a proportionally doubled-spaced typeface, 14-point Century Schoolbook.

Dated: July 13, 2023

*s/John J. Bursch*
John J. Bursch

*Attorney for Plaintiffs-Appellees/Cross-Appellants*

17

## CERTIFICATE OF SERVICE

I hereby certify that on July 13, 2023, I electronically filed the foregoing brief with the Clerk of the Court for the United States Court of Appeals for the Sixth Circuit by using the appellate CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

*s/John J. Bursch*
John J. Bursch

*Attorney for Plaintiffs-Appellees/Cross-Appellants*

# APPENDIX

| Louisville's Law | Colorado's Law |
| --- | --- |
| Place of public accommodation includes "[a]ny place, store or other establishment, either licensed or unlicensed, which supplies goods or services to the general public or which solicits or accepts the patronage or trade of the general public …." Metro Ord. § 92.02. | Place of public accommodation "means any place of business engaged in any sales to the public and any place offering services, facilities, privileges, advantages, or accommodations to the public, including but not limited to any business offering wholesale or retail sales to the public …" and other examples. C.R.S. § 24-34-601(1). |
| "Any person or persons claiming to be aggrieved by an unlawful practice that is prohibited by this chapter may file a written complaint …. Any member of the Human Relations Commission - Enforcement who has reason to believe an unlawful practice has occurred may file a complaint." Metro Ord. § 92.09(A). | "Any person claiming to be aggrieved by a discriminatory or unfair practice … may, by himself or herself … file with the division a verified written charge …. The commission, a commissioner, or the attorney general on its own motion may make, sign, and file a charge alleging a discriminatory or unfair practice [in certain cases]." C.R.S. § 24-34-306(1)(a)-(b). |
| Person includes "an individual and any group of one or more natural persons, such as, but not limited to … partnerships, associations, corporations, unincorporated organizations, … trusts, legal representatives, trustees in bankruptcy, receivers, … the Metro Government or any of its agencies, and any other | "'Person' means one or more individuals, limited liability companies, partnerships, associations, corporations, legal representatives, trustees, receivers, or the state of Colorado and all of its political subdivisions and agencies." C.R.S. § 24-34-301(15)(a). |

| | |
|---|---|
| legal, governmental or commercial entity as well as a natural person or persons." Metro Ord. § 92.02. | |
| "[I]t is an unlawful practice for a person to deny an individual the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of a place of public accommodation … on the ground of … sexual orientation." Metro Ord. § 92.05(A). | "It is a discriminatory practice and unlawful for a person, directly or indirectly, to refuse, withhold from, or deny to an individual or a group, because of … sexual orientation … the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of a place of public accommodation …. " C.R.S. § 24-34-601(2)(a). |
| "It is an unlawful practice for a person, directly or indirectly, to publish, circulate, issue, display, or mail, or cause to be published, circulated, issued, displayed, or mailed, a written, printed, oral or visual communication, notice, or advertisement, which indicates that the goods, services, facilities, privileges, advantages, and accommodations of a place of public accommodation, resort or amusement, will be refused, withheld, or denied an individual on account of his … sexual orientation … or that patronage of, or presence at, a place of public accommodation, resort or amusement, of an individual, on account of his … sexual orientation … is objectionable, unwelcome, unacceptable, or | "It is a discriminatory practice and unlawful for a person, … directly or indirectly, to publish, circulate, issue, display, post, or mail any written, electronic, or printed communication, notice, or advertisement that indicates that the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of a place of public accommodation will be refused, withheld from, or denied an individual or that an individual's patronage or presence at a place of public accommodation is unwelcome, objectionable, unacceptable, or undesirable because of … sexual orientation …." C.R.S. § 24-34-601(2)(a). |

| | |
|---|---|
| undesirable." Metro Ord. § 92.05(B). | |
| Penalties include "full and equal enjoyment of the … services"; "cease and desist" orders; "[r]eporting as to the manner of compliance"; "[p]osting notices"; "[p]ayment to the complainant of damages for injury caused by an unlawful practice including compensation for humiliation and embarrassment, and expense incurred"; and attorney's fees. *See* K.R.S. § 344.230(2)-(3), § 344.450; Metro Ord. § 92.09(A) (incorporating same). | Penalties include fines "not less than fifty dollars nor more than five hundred dollars per violation"; "cease and desist" orders; and other "affirmative action[s], including the posting of notices." *See* C.R.S. § 24-34-602(1)(a), § 24-34-605, § 24–34–306(9). |